## CLARK *against* SIGOURNEY.

*Hartford,*
June, 1846.

Clark
*v.*
Sigourney.

17 511
71 425

A promise made by one of two joint makers of a promissory note, to pay it, is sufficient to take it out of the statute of limitations as against the other.

Neither the admissibility in evidence, nor the effect, of such promise, is varied, by the circumstance that the person sought to be charged, signed the note as the surety of him who made the promise.

Whether the promise was made, is a question of fact, to be determined by the jury; but what is the construction and effect of it, if made, is a question of law, to be decided by the court.

Any act done by the promisee, at the request of the promiser, by which the former sustains any loss, trouble or inconvenience, even of the most trifling description, if not utterly worthless in fact and in law, constitutes a sufficient consideration for a promise, although the promiser derives no advantage therefrom.

Therefore, where *B*, at the request of *A*, and at his sole risk, executed to him a release deed, without covenants, of all *B's* right in certain land therein described, in consideration of which, *A* gave his promissory note to *B* for 300 dollars; and it afterwards appeared, that *B* had no title to the land so conveyed; it was held, that the consideration of the note was sufficient.

*A* gave his note to *B*, payable to *B*, or order, on a certain future day. This note *B* retained in his hands, doing nothing else with or in relation to it, until his death, which was long after it fell due. It afterwards came into the hands of *C*, the widow and executrix of *B*, with the name of *B* written in blank by him on the back of it; and *C* delivered it, in the state in which she found it, to *D*, for a valuable consideration. In an action brought by *D*, as indorsee of the note, against *A*, as the maker, alleging, that *B*, by his indorsement in writing, under his hand, ordered the contents thereof to be paid to *D*, it was held, 1. that as *D* claimed title to the note, by an immediate indorsement of it to him by *B*, it was necessary for *D*, in order to sustain that title, to prove such an indorsement; 2. that the word *indorsement*, as applicable to negotiable paper, imports a transfer of the legal title to the instrument, by contract; 3. that the consummation of this contract must be shown, by a delivery by the party making the transfer, to the party to whom it is made, and an acceptance by the latter; the mere act of the payee's writing his name on the back of the instrument not being sufficient for this purpose; 4. that the legal title of the note being in *B*, at the time of his death, it then vested in *C*, his executrix, and could be transferred only by her indorsement; 5. that *C*, as executrix or otherwise, had no authority to deliver the note as a note indorsed by *B*; 6. that *D*, consequently, had acquired no legal title; 7. that as the note came into *D's* hands after it became due, it was subject to the defence of want of legal title in him. [Two judges dissenting.]

THIS was an action, by the indorsee, against one of the makers, of a joint promissory note, for 300 dollars, dated the 23d of *March* 1836, payable to *John Caldwell,* or order, on or before the 1st of *April* 1837. The declaration alleged, that the note was made jointly by *Thomas Lloyd* and the defendant; that *Lloyd* had died, and the defendant was the

HARVARD LAW LIBRARY

*Hartford,*
June, 1846.

Clark
*v.*
Sigourney.

survivor ; and that " said *Caldwell*, by his indorsement of the same note in writing, under his hand, ordered the contents thereof to be paid to the plaintiff, or his order, according to the tenor of said note."

The defendant pleaded, 1st, *non assumpsit ;* and 2dly, that the cause of action did not accrue within six years next before the commencement of the suit.   On these pleas issues were joined.

The defendant having filed a motion for a discovery by the plaintiff, touching the matters in issue, the plaintiff disclosed the following facts.   Before the commencement of the suit, but after the death of *John Caldwell*, the payee of the note, and after it became due, *Francis Parsons*, Esq. called on the plaintiff, in behalf of Mrs. *Caldwell*, the widow and executrix of *John Caldwell*, and proposed to let the plaintiff have the note.   After some conversation, in which he stated the reasons for disposing of the note, the plaintiff agreed to take it, and give Mrs. *Caldwell* his note for the full amount.   This the plaintiff did, and authorized the suit now pending to be instituted.   The plaintiff's object in taking the note, was, to oblige Mrs. *Caldwell ;*  and it was understood between him and her, that whatever expense he was subjected to, should be allowed him by her.   The plaintiff is the sole owner of the note in suit;  and the note he gave Mrs. *Caldwell*, as he is informed and believes, has been negotiated, and the sum of 350 dollars has been received by her thereon.

The plaintiff, after having his recollection refreshed by Mr. *Parsons*, stated more particularly, that at the time of the exchange of notes, Mr. *Parsons* remarked in substance, that Mrs. *Caldwell* had a note against the defendant, which was shown, and is the note in suit; that Mrs. *Caldwell* had been at considerable expense for repairs on her house, and that he, acting as her agent, had relied upon money from the defendant to pay it ;  that he supposed the defendant would at least pay the interest, if not the principal, but that the defendant had refused to pay any thing, unless compelled to do so, by law ; that he had no reason to believe, that there was any legal defence to the note, and that it was perfectly good ; but that, as the defendant refused to pay it, he could not borrow money upon it, and inquired if the plaintiff would take the note, and give Mrs. *Caldwell* his note, on which she could raise the

money; that the plaintiff's note could lie, till he collected the one in suit, which the defendant, in his opinion, could not avoid paying; and that whatever expense the plaintiff incurred, would be refunded by Mrs. *Caldwell.* Believing the representations so made, and solely to oblige Mrs. *Caldwell,* the plaintiff exchanged the notes as above stated.

*Hartford,*
*June,* 1846.

Clark
*v.*
Sigourney.

The cause was tried at *Hartford, January* term 1846, before *Church,* J.

On the trial, the note mentioned in the declaration was produced in evidence. On the back of it, in the proper handwriting of *John Caldwell,* was his name in blank; and no other indorsement or writing, appeared upon the back of the note. The plaintiff also introduced evidence to prove, and claimed that he had proved, that *Thomas Lloyd,* one of the makers of this note, at different times before the expiration of six years from the time that the note fell due, and within six years from the time of the commencement of this action, fairly and understandingly promised the agent of the executrix of *John Caldwell* to pay the note.

The defendant claimed, that the note was given, at the time it bears date, by *Lloyd* and himself, for the sole benefit of *Lloyd;* that *Lloyd* was alone the principal, and the defendant a mere surety for him.

It was admitted, that the note grew out of a transaction between *Lloyd,* on the one part, and *John Caldwell, John Morgan* and *Jonathan Brace,* trustees of the *Connecticut Land Company,* which resulted in the execution, by said trustees, of a deed of a certain parcel of land in *Cleveland,* in the state of *Ohio,* to *Lloyd.* This was a release deed, without covenants. The defendant claimed, that the consideration of the note was a supposed title in the trustees to the land described in the deed; and that this land then was, and long before had been, in the adverse possession and occupation, partly of the city of *Cleveland,* as a public highway, and partly of one *Johnson.* The defendant also claimed, that the title, if any existed, belonged to the *Connecticut Land Company;* and that the note, if of any value, belonged to the heirs at law of *John Morgan,* deceased, who was the survivor of the trustees, and not to the estate of *John Caldwell,* nor to the plaintiff.

The plaintiff, on the other hand, claimed, that the sole consideration of the note was *the deed,* and not any supposed title

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

Clark
*v.*
Sigourney.

to the land described in it ; and that it was executed, by *John Caldwell* and the other trustees, at the special request of *Lloyd,* and at his sole risk, and for his sole accommodation.

The defendant also offered evidence to prove, and claimed that he had proved, that the note was not negotiated by *John Caldwell,* in his life-time, but remained in his hands until his death, which was long after it fell due ; that after his death, it came into the hands of his widow and executrix, and remained in her hands, until some time in *January* 1844, when, at her request, it was, by her agent, delivered to the plaintiff.

There was no proof, nor was it claimed, that *John Caldwell,* in his life-time, had made any agreement with the plaintiff, or with any other person, to negotiate or transfer the note, except what may be inferred from the fact that his name was indorsed in blank, on the back of it.   Nor was there any evidence for what purpose the name of *Caldwell* was there indorsed.

The defendant also offered evidence to prove, and claimed that he had proved, that the plaintiff only received said note of the agent of the executrix of *Caldwell,* in exchange for his note of 350 dollars, under an agreement that the plaintiff should not be required to pay that note, until the note now in suit should be collected ; and that the costs and expenses of this suit, should be paid by Mrs. *Caldwell.*   But there was no evidence to prove, that the plaintiff knew that any administration had ever been taken out upon *Caldwell's* estate, nor that he had left a will, or appointed an executrix.

The defendant objected to the admission of the evidence to prove the promises of *Lloyd* to the agent of said executrix to pay the note ; but the court overruled such objection, and admitted the evidence.

The defendant then insisted, that said promises were merely evidence to go to the jury, and that it was the province of the jury to determine, whether they were sufficient to take the case out of the statute of limitations, and prayed the court so to instruct the jury.

The court did not so instruct the jury, but charged them, that if said promises were made by *Lloyd, as claimed by the plaintiff,* and he recognized the note as an existing debt, they were sufficient to take the note out of the statute of limitations, as against both the makers or signers thereof.

The defendant also claimed, that if the note was only

*Hartford,*
June, 1846.
———
Clark
*v.*
Sigourney.

indorsed with the name of *John Caldwell* in blank, written upon it, before his death, under the circumstances claimed and admitted as aforesaid, no legal title passed to the present plaintiff, in consequence of the delivery of the note to him, by the agent of said executrix, without a new indorsement of it by her; and that the plaintiff, therefore, could not legally maintain this suit, in his own name; and the defendant requested the court so to charge the jury.

The court did not so instruct the jury, but charged them, *pro forma*, that upon the facts, as admitted and claimed to be proved, if the jury found them to be true, the plaintiff was entitled to sustain this action.

The jury found both the issues for the plaintiff; and thereupon the defendant moved for a new trial.

*Hungerford* and *Chapman*, in support of the motion, after remarking, that the note in question being over-due, at the time it came into the plaintiff's hands, he took it subject to all defects in the title; and that the indorsement of a note is equivalent to the making of a new one, and necessarily implies a *contract*—contended, 1. That the allegation that *Caldwell*, by his indorsement in writing, ordered the contents to be paid to the plaintiff, is a *material* one, implying a delivery, and must be *proved*. 2 *Stark. Ev. pt.* 4. *p.* 246. *Smith* v. *Mc-Clure*, 5 *East* 476. *Churchill* v. *Gardner*, 7 *Term R.* 596.

2. That the title to a note can be transferred, in the first instance, by indorsement, either of the payee, or of his legal representative. Here was no indorsement by the legal representative of the payee.

3. That to give effect to the indorsement of the payee, it was indispensable that it should have been *delivered*. *Bayl. Bills*, 37. 59. 103. *Woodford* & ux. v. *Dorwin*, 3 *Verm. R.* 83. *Adams Bank* v. *Jones*, 16 *Pick.* 574. *Baird* v. *Williams*, 19 *Pick.* 381. *Clark* v. *Boyd*, 2 *Ham. R.* 56.

4. That in this case, there was no delivery by the payee, either in person, or by his authorized agent. The executrix of the payee, as executrix, was not his agent; nor had she, personally, any authority, in fact or by presumption, after his death.

*Ellsworth* and *Parsons*, contra, contended, 1. That although

a note over-due is taken subject to all the equities that attach to it in the hands of the payee, those equities have no reference to the mode of enforcing payment.

2. That an indorsement is merely a mode of transferring the title to a note ; and the moment the payee of a note payable to his order, puts his name upon it, it becomes payable to *bearer ;* and any *bona fide* holder of such a note has a valid title.   Bank bills payable to the order of the cashier, and indorsed by him, but not put in circulation until after his death, are effective against the bank.   So the indorsement of a common promissory note by the payee, and left at the bank for collection, but not due at the time of his death, passes the title. *Murray* v. *The East India Company,* 5 *Barn. & Ald.* 204. (7 *E. C. L.* 67.)

STORRS, J.   On the trial of this cause, several claims were made by the defendant, and overruled by the presiding judge, of which no notice has been taken on the argument here ; but as a new trial is to be had on another ground, and those points may again be raised, it is proper for us to express an opinion upon them.

In *Bound* & al. v. *Lathrop,* 4 *Conn. R.* 336. it was decided, that the acknowledgment of one of several joint makers of a promissory note, was sufficient to take it out of the statute of limitations as against the others, on the ground that the admissions of one of several joint contractors, in respect of the contract entered into, are evidence against all.   It was decided also, in *Coit* v. *Tracy* & al., 8 *Conn. R.* 268. that the acknowledgment of a debt, by one joint debtor, is admissible evidence against all, to take the case out of the statute of limitations ; although, under the circumstances of collusion disclosed in that case, it was held, that the acknowledgment was not sufficient for that purpose.   If from the acknowledgment of one of several joint debtors, the law will imply a promise to pay the debt against the others, it is scarcely necessary to say, that an express promise to do so, made by one, will bind the others. Therefore, the evidence objected to, by the defendant, of the promises to pay the note in question, made to the executrix of the payee by *Lloyd,* a joint maker of it with the defendant, was properly admitted, unless it is objectionable on the ground that the defendant signed the note merely as *Lloyd's* surety.

It is well settled, however, that neither the admissibility nor effect of the admission or promise, is varied by this circumstance. *Sigourney* v. *Drury* & al. 14 *Pick.* 387. *Hunt* v. *Bridgham,* 2 *Pick.* 581. *Perham* v. *Raynal* & al. 2 *Bing.* 306. (9 *E. C. L.* 413.) *Burleigh* v. *Stott,* 8 *Barn. & Cres.* 36. (15 *E. C. L.* 151.) *Wyatt* v. *Hodson,* 8 *Bing.* 309. (21 *E. C. L.* 301.) It is to be observed, that in the present case, there was no claim by the defendant, that the promise by *Lloyd* was made collusively ; and that as the question **was** submitted to the jury on the claim of the plaintiff, they have found that it was made fairly.

The defendant also claimed, that the question, whether the promises proved to have been made by *Lloyd,* were sufficient to take the case out of the statute of limitations, should be submitted to the jury. The presiding judge, however, decided upon their sufficiency, and left it to the jury merely to find whether the promises were made as claimed by the plaintiff. In this he was correct. Whether the promises were made, is a question of fact, to be determined by the jury ; but what is the construction and effect of them, if made, is a question of law, to decide which, is the province of the court.

The defendant further claimed on the trial, that there was a want of consideration for the note in question. It is found, that the consideration of this note was, that *Caldwell* and others had executed and delivered to *Lloyd,* at his special request, and at his sole risk, the deed produced on the trial, which was a release to him, without covenants, of all their right, title and interest in and to the land therein described. On these facts this objection was, in our opinion, unfounded. Any act done by the promisee, at the request of the promiser, by which the former sustains any loss, trouble or inconvenience, constitutes a sufficient consideration for a promise, although the latter obtains no advantage therefrom ; and in respect to the extent of such loss, trouble or inconvenience, it is immaterial that it is of the most trifling description, provided it be not utterly worthless, in fact and in law. *Com. Dig. tit.* Action upon the case upon *Assumpsit. B.* 1. *Pillans* & al. v. *Van Mierop* & al. 3 *Burr.* 1673. *Jones* v. *Ashburnham* & ux. 4 *East* 463. *Pullin* v. *Stokes,* 2 *H. Bla.* 312. *Morley* v. *Boothby,* 3 *Bing.* 107. 112. (11 *E. C. L.* 56, 7.) *Willatts* v. *Kennedy,* 8 *Bing.* 5. 10. (21 *E. C. L.* 200. 202.) *Sumner* v. *Williams,*

8 *Mass. R.* 200. *Stocking* v. *Sage* & al. 1 *Conn. R.* 519. 1 *Marsh.* 535. 538. 2 *Pet.* 182. *Chitt. Cont.* 25. (4 *Am.* ed.) In *Sturlyn* v. *Albany, Cro. Eliz.* 67. it was held, that the showing of a deed by which rent was reserved, by the plaintiff, to the defendant, at the request of the latter, constituted a sufficient consideration for a promise by him to pay the rent due; the court saying, that " when a thing is to be done by the plaintiff, be it never so small, it is a sufficient consideration to ground an action." That the execution and delivery of the deed, in the present case, were at the request of the defendant, and were attended with at least some actual trouble and inconvenience, is, in our opinion, a sufficient consideration to support the promise declared on. Independent of this ground, we are by no means prepared to say, that a contract for the payment of a sum of money for the release of one's right, title and interest in a piece of land, can be impugned for want of consideration, on the ground that no interest was acquired by the conveyance. By the very terms of such a contract, the risk and hazard of the title is assumed by the releasee; and to hold, that he is excused from performing it, because he happened to acquire no interest by the release, would be to throw that risk and hazard upon the releasor, contrary to the plain intent of the parties. It is unnecessary, however, to consider this question. *Barnum* v. *Barnum*, 8 *Conn. R.* 469.

We are then brought to consider the question which has been argued before us, as to the right of the plaintiff to maintain this suit on the facts admitted in the case, and those claimed to have been proved by the defendant. Those facts are, that the note in question was not negotiated by *Caldwell*, the payee, in his life-time, but remained after its execution in his hands until his death, which was long after it fell due; after which it came into the hands of his executrix, who was his widow, with the name of *Caldwell* written in blank by him on the back of it; and that the executrix subsequently delivered it to the plaintiff, for a valuable consideration. There was no proof, nor was it claimed, that *Caldwell*, in his life-time, had made any contract or agreement with the plaintiff, or with any other person, to negotiate or transfer said note, except what might be inferred from the fact that his name was written as aforesaid on its back; nor was there

any evidence for what purpose his name was thus written. Under these circumstances, the note must be treated as an instrument with which the payee had done nothing previous to his death, except to write his name upon its back, unless by that act he is to be deemed to have conferred upon his executrix an authority to deliver it to some person after his death.

*Hartford,* June, 1846.

Clark *v.* Sigourney.

As the plaintiff in his declaration alleges a title to this note, by an immediate indorsement of it to him, by the payee, it is necessary for him, in order to sustain that title, to prove such an indorsement. Indeed, if under a declaration adapted to the case, he had claimed title to it under a remote indorsement by the payee, it would likewise have been necessary to prove an indorsement by him: the note being drawn payable to the payee, or his order, a legal title could not be transferred to it, under which any other person could claim, either directly or remotely, except by his indorsement.

The question before us is, whether on the facts above stated, there was an indorsement of this note, by *Caldwell* to the plaintiff. To determine this, it is necessary to enquire, 1. whether the writing of the name of the payee on the back of the note, constitutes an indorsement of it to the holder, irrespective of the circumstances under which it came into his possession; and 2. whether, if it does not, a legal title to the note was vested in the plaintiff as indorsee, by the delivery of it to him by the executrix.

The first question turns upon the legal import of the word *indorsement.* This is a technical, mercantile term, denoting the act by which the legal title to that particular class of bills of exchange and promissory notes which are drawn payable to order, is transferred. Like other technical words, it is used, in relation to those instruments, not in its strict etymological sense, which would imply that it was written *on the back* of them, as is evident from the circumstance that what is, in legal signification, an indorsement of a bill or note, need not be written on that part of it; but in an artificial sense, to signify the transfer of the legal title to these instruments. It is, therefore, like all other conveyances of property, a contract; and so far as it operates as a transfer of the bill or note, is of that class of contracts which are termed *executed.* An indorsement, however, in addition to being such a conveyance, imports a future liability on the part of the indorser, in the event

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

Clark
*v.*
Sigourney.

of a non-payment or non-acceptance, (as the case may be,) by prior parties respectively to these instruments, unless the indorsement, by its terms, is so restricted as to exempt him from such liability ; and so far as it respects that liability, it is an *executory* contract. Now, it is a universal principle, applicable to every contract, whether executed or executory, evidenced by a written instrument, that the instrument must be *delivered*, by the party making the transfer or promise, to the party to whom it is made, and *accepted* by the latter : the delivery by the former being evidence of his assent to the transfer or promise, and the acceptance by the latter, the evidence of his consent to receive it ; and both unitedly showing the meeting of the minds of the parties in the transaction, which is the consummation of the contract. The delivery, however, need not be expressly proved, since it may be, and indeed usually is, presumed from circumstances, and especially from the fact that the instrument is in the possession of the party to whom it purports to have been made ; a presumption, however, which may be disproved. On principle, therefore, the mere act of writing the name of the payee on the back of the note, is not sufficient to constitute an indorsement of it ; but to complete it as such, the further act of a delivery of it by him to the person to whom a title in it is intended to be transferred, is necessary.

We are not, however, left to general reasoning on this point ; as it has been judicially settled, in repeated instances.

In *Adams* v. *Jones*, 12 *Ad. & El.* 455. (40 *E. C. L.* 94.) which was an action of *assumpsit* by the indorsee against the acceptor of a bill of exchange, drawn by *F.*, and by him indorsed to the plaintiff, the plea was, that *F.* indorsed it in blank, and delivered it to the plaintiff, as the agent of one *R.*, to whom *F.* was indebted, for the purpose, and on the terms that the plaintiff should deliver it to *R.*, on account of the debt ; that the plaintiff received it as such agent only, and for such purpose, and without consideration ; that the plaintiff detained the bill, in breach of his duty, and in fraud of *R.*, who claimed the bill, dissented from the action, and required the defendant not to pay the amount to the plaintiff. This plea was held good, after verdict. Lord *Denman*, C. J., in delivering the opinion of the court, says : " The declaration avers, that *Foulke* indorsed the bill *to the plaintiff*. Now, a bill may be

*Hartford,*
June, 1846.

Clark
*v.*
Sigourney.

indorsed to the party, in two ways—either by a special indorsement, making it payable to that party, or by a blank indorsement and delivery to that party. In the latter way, at all events, if not in the former, the bill must be *delivered* to the party as indorsee, in order to constitute an indorsement to him. But this plea avers, that the bill was indorsed in blank, and delivered to the plaintiff, not as indorsee, but as agent only for another, to whom he was to deliver it, and who was the real indorsee. We think, therefore, that it is a constructive denial, that the bill was *indorsed* to the plaintiff, and that it is good in the present stage of proceedings, however open it may have been to a special demurrer."

In *Marston* v. *Allen,* 8 *Mees. & Wels.* 494. which was an action of *assumpsit* on a bill of exchange, drawn by *J. H.* upon and accepted by the defendant, the declaration averred, that *J. H.* indorsed it to *E. M.,* and *E. M.* indorsed it to the plaintiff. The plea was, that *J. H.* did not indorse the bill to *E. M.* At the trial, the plaintiff proved, that *J. H.* wrote his name on the back of the bill; that *J. H.* had received the bill as the accountant to the *Imperial Bank,* for a debt due to the bank; and that *J. H.,* after writing his name on it, had delivered it to *W. M.,* who was also employed in the bank, to be kept for the bank, whose property it was; that *E. M.* had received the bill from *W. M.,* for value, and indorsed and delivered it, for value, to the plaintiff. The defendant proposed to show, that both *E. M.* and the plaintiff received the bill, with full knowledge of the fraud committed by *W. M.* in handing over the bill. The court rejected this evidence as inadmissible in support of the plea. The plaintiff obtained a verdict, and a new trial was granted. The court say, that if the facts stated had been proved, the jury ought to have found for the defendant on the issue that *J. H. did not indorse* the bill to *E. M.*; "for," they add, "although there was an indorsement, there was no valid *delivery* by *J. H.,* or by any authority from him, *and so no competent transfer by indorsement* of the bill to *E. M.*" Much reliance was placed on the case of *Adams* v. *Jones,* and also on the case of *Brind* v. *Hampshire,* 1 *Mees. & Wels.* 369. We have not access to the latter case; but *Alderson,* B., in delivering the opinion of the court, after citing the decision in *Adams* v. *Jones,* says: "In *Brind* v. *Hampshire,* this court came to the same conclusion, Lord

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

Clark
*v.*
Sigourney.

*Abinger* and Mr. Baron *Park* holding in that case, that a *delivery to the indorsee is necessary to complete an indorsement ;* by which these learned judges clearly mean, a transfer by indorsement." And he subsequently adds : "If then a transfer by indorsement, as we have before shown, consists in an indorsement, (or writing the name of the party transferring the bill, on the bill,) *and a delivery for the purpose of completing such transfer,* it will follow, that the issue ' *did not indorse,*' involves both these propositions."

This principle is strongly confirmed, by the forms of declarations on indorsed bills and notes, which, until recently, always prevailed, and the reasons on which the mode of declaring, now more usually adopted, is sanctioned. It was formerly the invariable practice, after the averment that the payee ordered the sum of money mentioned in the instrument to be paid to the indorsee, to allege, that it was afterwards *delivered* to him by the payee. It is now more usual to state merely, that the payee *indorsed* the instrument to the indorsee, omitting the allegation of a delivery ; and this mode of declaring is sanctioned, on the ground that indorsing includes, *ex vi termini,* a delivery, and therefore, that it need not be expressly stated ; thus impliedly confirming the principle that a delivery is necessary.

In the case of *Clark* v. *Boyd,* 2 *Ham. R.* 56. the note on which the suit was brought by the plaintiff, as indorsee, against the maker, was, at the time of the death of *Pierce,* the payee, found among his papers, indorsed by him to the plaintiff; and the executor of *Pierce,* supposing it to be the property of the plaintiff, had not inventoried it as part of the assets of *Pierce,* but had delivered it to the plaintiff. The facts, therefore, as it respects the questions which have been argued, were precisely like those in the present case. The supreme court of *Ohio* held, in that case, that the jury were properly instructed, that the plaintiff could not recover, unless, in addition to the fact of executing the assignment, the note so assigned had been delivered to the plaintiff, or some person for his use. The point was also presented to them, whether a legal title to the note vested in the plaintiff, by the delivery of it to him by the executor, which is the remaining enquiry before us. On this question that court held, and we think correctly, that

the delivery by the executors, was not a sufficient delivery to transfer such a title to the plaintiff.

If, as has been shown, the legal title to the note in question was not transferred, by the act of the payee, in writing his name upon its back, without a delivery of it to the person to whom it was to be transferred, that title remained in the payee until his death. That act was a mere nullity. The name of the payee might have been legally erased by him ; or if not erased, the act of writing it was wholly inoperative, during his life. The legal title of the note, being in the payee at the time of his death, then vested in his executrix, as in the case of other personal estate ; and that title could be transferred only by her indorsement, because there is no other legal mode, by which a transfer of a bill or note payable to order, can be made. A mere delivery of the instrument by her to the plaintiff, without indorsement, therefore, vested in him an equitable title only. It was a delivery only of an instrument on which was no indorsement, in the legal sense of that term, and which could be legally transferred only by an indorsement.

It is said, that the note came into the hands of the executrix, with the indorsement of the payee; and that she had a legal authority to do what she chose with it, and therefore to deliver it to the plaintiff. The fallacy of this argument consists in considering the mere writing of the name of the payee by him on the back of the note, as an indorsement. A legal indorsement, or transfer by indorsement, consisting of such a writing, *conjointly with a delivery*, and being merely inchoate and incomplete without a delivery, the result is, that, as there had been no delivery by the payee of the note, it came to the hands of his executrix without any indorsement, and therefore was not indorsed, in a legal sense, when it was delivered by her to the plaintiff.

It is claimed, that from the facts in the case, an authority is to be implied, from the payee to his executrix, to deliver the note after his death, as a note indorsed by him. In the first place, we do not think, that such an inference can justly be made ; but, in the next place, if it could, any such authority must have been determined by his death, and the delivery, therefore, cannot be considered valid, on the ground that it was made by the executrix as his agent. *Galt* & al. v. *Galloway,* **4** *Pet.* **332. 344.**

HARVARD LAW LIBRARY

*Hartford,*
June, 1846.

Clark
*v.*
Sigourney.

In whatever light, therefore, the subject is considered, we think that the plaintiff could not recover, for the want of a legal title to the note.   Although the defence may seem to be of a technical character, we cannot resist it, without disregarding established principles, and confounding the distinction between legal and equitable rights.

The objection to a recovery here, is, that the plaintiff has acquired no legal title or interest in the note in question, because it has never been indorsed, by the payee or his executrix, without which no legal title to it can be transferred; and it is hardly necessary to say, that no person, without a legal title to the instrument, can, in a court of law, sustain an action upon it.

It is unnecessary to consider how this question would have stood, if the plaintiff had become the holder of the note in question previous to its becoming due.   It being received by him afterwards, he does not stand in the situation of a *bona fide* holder for value; and the note in his hands is, therefore, subject to the defence which is here set up.   This point was expressly decided in *Marston* v. *Allen,* which has been before cited.

A new trial is therefore advised.

In this opinion, CHURCH and HINMAN, Js. concurred.


WILLIAMS, Ch. J. and WAITE, J., concurred upon all the points presented by the motion, except one;  and that is, whether this defendant can defeat the suit, on the ground that the note was not indorsed to the plaintiff.   Their views on this point were substantially as follows.

It is said, that the simple act of putting the name of the payee on the note, is not an indorsement, but it must be accompanied by a delivery.   Such, no doubt, is the law.   But there may be a constructive delivery of a note, by any act which puts it in the power or under the controul of the indorsee.   5 *Metc.* 201–3.   And this seems to be a case of that kind.   It is as important that a note should exist, as that it should be delivered when made.   But if a person gives his name to another, the person receiving it, may fill over it a note or indorsement to any amount.  *Russel* v. *Langstaffe, Doug.*

*Hartford,*
June, 1846.
Clark
*v.*
Sigourney.

514.　*Violet* v. *Patton,* 5 *Cranch* 151.　The question here is, whether there was not sufficient evidence of a complete indorsement shown by the plaintiff.　He proved the hand-writing of the payee and indorser; and he proved possession in himself, procured by actual payment to the holder, and a delivery by the only person authorized to deliver the note. He has thus shown a title, which a court of equity, and even a court of law, will protect.

But it is said, he cannot sustain an action in his own name, at law; because the note was in the possession of *Caldwell,* at the time of his death; and so there is no evidence of a delivery.

We are to keep in mind, that it is a settled fact, that it is the duty of the defendant to pay this note, and to pay it to the plaintiff.　His rights, then, are not affected, whether the suit is brought in the name of the plaintiff, or in the name of the administrator of *Caldwell.*　The objection, therefore, is strictly technical.　Ought it to prevail?

Had this note been negotiated before it was due, under circumstances otherwise similar, could there have been a doubt as to the right of the plaintiff to recover?

In such cases, the *bona fide* purchasers of a bank note, or bill of exchange, or negotiable promissory note, have been allowed to recover, although they could have their title only through a thief or a robber.　*Miller* v. *Race,* 3 *Burr.* 1516. and *Peacock* v. *Rhodes, Doug.* 633.　In the last-mentioned case, the defendant drew a bill payable to *Wm. Ingham* or order, by whom it was indorsed to *John Daltry,* and by *Daltry* to *Joseph Fisher,* from whom it was stolen.　The plaintiff received it in the usual course of business, and declared upon it as indorsee of *Ingham,* and recovered.　In fact, *Ingham* no more delivered that bill to the plaintiff, than *Caldwell* delivered this to *Clark.* There was no connexion between the plaintiff, in that case, and the indorser, but by a felony.　Here, the connexion between the plaintiff and *Caldwell,* is through the legal representative of the latter, in whose power *Caldwell* has placed this note, with his name upon it, and by whom, thus enabled, it has been *bona fide* delivered to the plaintiff.

If it be said, that the bill, in the case cited, had once been delivered, and this has not; that can make no difference in principle.　The danger to the public is as great, in the one

*Hartford,*
June, 1846.

Clark
*v.*
Sigourney.

case as in the other; and there is less excuse for a payee keeping his notes with his blank indorsements upon them, than there is for the indorsee of a note. In the latter case, it is evidence of his title to the property; in the former case, it only renders his title less secure, and in case of loss or robbery, endangers the rights of others. There is no intimation, in those cases, that the decisions would have been different, if the bank note had been stolen from the banking-house, or the bill from the acceptor. The fact that the bank note was signed and ready for delivery, or the bill of exchange was indorsed, gave the opportunity to pass it off as delivered.

In the case on trial, in consequence of the indorsement by *Caldwell,* if the note was lost or stolen, a *bona fide* purchaser might have been imposed upon, as much as in the cases cited; and it is a maxim of universal application, that if one of two innocent persons are to suffer, he who by his negligence has been the cause of the loss, shall sustain it. And Lord *Mansfield* says: "The law is settled, that a holder, coming fairly by a bill or note, has nothing to do with the transaction between the original parties, unless in case of money won at play." He adds, " I see no difference between a note indorsed blank, and one payable to bearer: they both pass by delivery, and possession proves property in both cases." *Doug.* 636.

From these authorities, therefore, it seems clear, that had this note been taken by the plaintiff, before it was due, this objection to the want of delivery, could not have prevailed: in other words, that as the plaintiff had the equitable title and possession, under an apparent legal title, the defendant could not be permitted to set up this defence; for courts will not readily listen to objections about forms, when the real merits and honest title are clear and plain.

If it be so that the plaintiff could have recovered, notwithstanding the want of proof of a delivery, had he taken the note before it was due, it is incumbent upon the defendant to show, that an indorsement after due, does not convey the legal title, as well as if made before. This he claims to have done, by insisting that the person taking a note over-due, takes it with all its defects as to title, &c. Now, if there was no defect of title in the party who took the bill before it was due, then the question recurs, is it a defect in the title, in consequence of its being negotiated after due?

It has been repeatedly holden, that a note or bill, when taken up by the indorser or drawer, may be negotiated long after it became due. *Callow* v. *Lawrence*, 3 *M. & S.* 95. *Hubbard* v. *Jackson*, 4 *Bing*. 390. (15 *E. C. L.* 12.) *Bond* v. *Storrs*, 13 *Conn. R.* 412. *Guild* v. *Eager*, 17 *Mass. R.* 615. So too, an accommodation bill may be negotiated long after it becomes due. *Charles* v. *Mendon*, 1 *Taun.* 224. *Sturdevant* v. *Ford*, 4 *M. & G.* 101. (43 *E. C. L.* 61.)

But although the legal title is not affected, it has been held, upon sound principles of equity, that notwithstanding such transfer, the defendant shall be allowed to make any defence he could have made against the original holder. Such was the law, as laid down in *Brown* v. *Davis*, 3 *Term R.* 82. received with much hesitation by Lord *Kenyon*, but since acquiesced in, as a rule framed to exclude fraud, founded in justice, and not to be used to promote injustice. *Boehm* v. *Sterling*, 7 *Term R.* 430. And in the former case, *Buller*, J., says, a fair indorsee can never be injured by this rule; for if the transaction be a fair one, he is still entitled to recover:—that is to say, he who purchases a note after it is due, has the same title as if he purchased it before due, except that the defendant shall not be prejudiced by such transfer. This affords the party all the protection that justice requires. In some more modern cases, it is said, the plaintiff takes the bill with all its infirmities; but the cases are such as show that the same thing is meant as in the former case. *Crosby* v. *Ham*, 13 *East* 499. *Bowman* v. *Wood*, 15 *Mass. R.* 534. The only exceptions to the rule that a bill over-due, may be negotiated as if not due, are those cases where such negotiations operate to the prejudice of any of the parties. *Beck* v. *Roby*, 1 *H. Bla.* 89. *Hubbard* v. *Jackson*, 4 *Bing*. 390. (15 *E. C. L.* 12.) So in *Down* v. *Halling*, 4 *B. & Cres.* 330. (10 *E. C. L.* 347.) where a check over-due was stolen and negotiated, it was held, that as the rights of the *bona fide* owner would be affected, a person who took it without proper enquiry, could not hold it against the real owner. In such a case, says *Abbott*, Ch. J., it is incumbent on the party who takes the instrument, to show that the party from whom he took it, had a good title. The former cases proceeded upon the ground, that if they were not admissible, injustice would be done to the defendant. This case proceeds upon the ground, that the former

HARVARD LAW LIBRARY

*Hartford,*
June, 1846.

Clark
*v.*
Sigourney.

owner, having been guilty of no negligence, shall not be deprived of his property by a felony, when the person taking it had been guilty of some negligence.

In the case before us, there is no doubt as to the title of the person from whom this plaintiff received the bill. She had both the legal and the equitable title. But the objection is, that the form of conveyance does not vest the legal title.

But when there has been a fair transfer for value of a bill or note, the indorsement is considered very much a matter of form. Thus, where a deceased person had, during his life, delivered a note, as security for a debt, but forgot to indorse it ; the holder, many years after, took out administration, and indorsed it to himself ; the master of the rolls said, there is no doubt that when the note was remitted, it was intended it should be a security ; and when a note is handed over, the indorsement is mere form. The transfer for consideration is the substance, it creates an equitable right, and entitles the party to call for the form. The other is bound to do that formal act, in order to substantiate the right of the party to whom he has transferred it ; and as he is bound to do it, the indorsement, by his representative, is undoubtedly as good as if it was by himself ; nor is it important, that the indorsement was by a person holding the double character of administrator and indorsee, because it was a mere form, not possessing any thing substantial. *Watkins* v. *Maule*, 2 *Jac. & W*. 243. The facts in this case are the reverse of the facts in that case ; but the reasoning seems to apply. The plaintiff having the equitable title, the indorsement is matter of form.

The name of *Caldwell* on the back, might have been placed there to negotiate the note, and it may have been in fact negotiated ; or it may have been placed there for the very purpose of aiding in its negotiation ; and the note is now negotiated fairly, by the person authorized by law for that purpose ; and the defendant excepts to the form in which it is done. He does not claim, that any one has a better title than the plaintiff, or that he would not be safe in paying it to him ; but he says, that the signature on the back was by the deceased, and the delivery was by his representative.

In such a case, the language of the court in *Little* v. *O'Brien*, 9 *Mass. R*. 423. is applicable. " This objection has very little weight in it. As the plaintiff came to the possession of

the note indorsed in blank, fairly, and without fraud, it is in his power to give the defendant a good and legal discharge." They therefore gave judgment for the plaintiff. That was a note given by the defendant to *Joseph O'Brien*, or order, and by him indorsed. When the action was commenced, the plaintiff had no interest in the note, other than as an agent of the insurance company, or as an individual stockholder; but it was delivered to him after it became due, without consideration, or indorsement, or legal transfer thereof, for collection for the company; but the court held the plaintiff might recover.

For the purpose of making bills negotiable, the right of property passes with the bills. " Every holder, with the bills, takes the property; and his title is stamped upon the bills themselves." *Per Eyre*, Ch. J. in *Collins* v. *Martyn*, 1 *B. &amp; P.* 651.

This remark was made in relation to bills not due; but unless the rights of the defendant, or a former holder, are to be affected thereby, it can make no difference whether the bill was taken before due, or after. In the case of *Sturtevant* v. *Ford*, 4 *Man. &amp; Gran.* 101. (43 *E. C. L.* 61.) the acceptor of an accommodation bill, was sued by an indorsee, to whom it was indorsed two years after it became due. *Tindal*, Ch. J. says: " Upon these pleadings, the plaintiff must be taken as a holder for value, without notice of any defect of title of his indorser." " I do not see much force in the argument that the circumstance of the bill being over-due when it is indorsed, puts the indorsee in the same position as the indorser, who, in the case of a bill drawn for his accommodation, cannot sue at all. I do not think that the holder is precluded from suing in all cases of accommodation bills indorsed after the time at which they purport to be payable :—nothing *dehors* the bill, as payment, &amp;c. ought, I think, to affect an indorser for value." It is true, that in these cases, there was an actual indorsement. But the argument goes to show, that where the bill or note comes *bona fide* into the hands of a *bona fide* purchaser, the rule is the same, whether the note is over-due or not, unless some third person is to be prejudiced thereby. In the case referred to, *Coltman*, J. says : " There is no reason why a bill may not be negotiated after it is due, unless there was an agreement for the purpose of restraining it." " I see nothing in the transaction prejudicial to the acceptor." And

*Hartford,*
June, 1846.

Clark
*v.*
Sigourney.

*Hartford,*
June, 1846.

———
Clark
*v.*
Sigourney.

*Creswell,* **J.** says: " By the law merchant, an indorsement may give to the indorsee a better title than the indorser had. It is said, the indorsee of a bill which is over-due, takes it subject to all the equities. Perhaps a better expression would be, that he takes the bill subject to all *its equities.*"

The case before us is that of a purchaser, who has paid value for a note over-due, to the person who had a legal and equitable right to dispose of the note, with the name of the deceased owner by him indorsed upon it. The plaintiff, therefore, has the equitable title, and the apparent legal title ; and the question is, whether the title shall fail, because the plaintiff cannot show an actual delivery to some one, by the deceased, during his life.

It is clearly shown, that this could have no effect, had the bill been negotiated before it was due ; and it seems to us, that the cases cited show, that a bill or note negotiated after due, stands upon the same ground, unless such negotiation is to prejudice the rights of the defendant, or some other persons having an interest in the bill or note.

New trial to be granted.