Farrington *v.* Park Bank.

[DUTCHESS GENERAL TERM, May 11, 1863. *Brown, Scrugham* and *Lott,* Justices.]

---

## FARRINGTON *vs.* THE PARK BANK.

The title of the owner of property in things movable can be divested and passed over to another only by his own consent and voluntary act, or by operation of law.

If his consent and voluntary act is made and signified by an agent or person acting in his behalf, such agent or person must have the requisite authority from his principal for that purpose.

A promissory note past due and dishonored, and which has been protested for non-payment, although it passes by delivery, and an action may be maintained upon it, by the holder, subject to the equities of the parties thereto, cannot be said to pass in the usual course of trade and business.

Although such paper will pass by delivery, and the holder may maintain an action upon it, the substantial elements of commercial paper for the purposes of trade are wanting, in the absence of an unqualified obligation of the parties to it to pay at maturity.

The holder takes it in the light of an assignee of the person from whom he receives it, rather than as an indorsee according to the usage of trade; and he therefore takes just such title, and no other, as his assignor had to it, at the time of the transfer.

Where B., being authorized by the owners of a protested note, as their agent, to take it to a particular bank and leave the same with the bank for collection, but without authority to sell or pledge it, converted it to another and a different purpose, by depositing it for collection on his own account and to be held as security for his indebtedness; *Held* that no title passed to the bank; B. having no power to make a sale or transfer in the nature of a pledge which would divest the owners of their interest in the note.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover the proceeds of a note, made by the Houston and Texas Central Rail Road Company, and deposited with the defendant for collection. The referee reported in favor of the plaintiff, and the defendant appealed from the judgment.

*S. W. Fullerton,* for the plaintiff.

*E. L. Fancher,* for the defendant.

*By the Court,* BROWN, J. At the time James Bigler left the note of the Houston and Texas Central Rail Road Company with the Park Bank, the defendant, for collection, he was not a joint owner thereof as copartner with D. Farrington & Son. That relation and interest had existed at the time the note was made. The note had, however, been discounted at the Bank of Newburgh and the proceeds carried to James Bigler's credit. When it fell due it was protested, and remained unpaid by the makers. It was afterwards paid by D. Farrington & Son, with their own means, and pledged by James Bigler to them, to secure the repayment of the money advanced, to take it out of the Bank of Newburgh. This fact is found by the referee and is not open to dispute upon this appeal. So that for all the purposes of this action Farrington & Son are to be deemed to have been the sole owners of the note at the time it was delivered over to the Park Bank. This view frees the case from some complication and leaves the result to depend upon the consideration of a single question, and that is the power of James Bigler to transfer the note to the Park Bank, so as to give it a title thereto, and to the proceeds thereof, superior to the right and title of D. Farrington & Son.

The object of the action is to recover the proceeds of the note. The referee has found that the note remained in the Bank of Newburgh until the 10th of April, 1859, when it

was taken therefrom by Bigler, at the request of Farrington & Son, and left with the defendant to be forwarded to Texas for collection; at which time the agreement was again stated and ratified, that the proceeds should be applied to the payment to Farrington & Son of the money advanced by them to take the note up. The referee also finds that on the 11th of April, 1859, Bigler left the note with the defendant to be forwarded by it to Texas for collection, on his own account, and without disclosing the fact that it had been pledged to or was the property of the plaintiffs. The note was so forwarded, and was collected in Texas for the bank, and the proceeds thereof, amounting to $3151.40, received by it on the 16th of November, 1859. That previous to the 25th of August, 1859, and during that year, Bigler had a large line of discounts at the bank and had large sums of money collected by it for him on paper left for collection. And that at various times between the 11th of April and the 25th of August, 1859, Bigler agreed with the bank that it might hold all notes left with it by him for collection, including the note of the Houston and Texas Central Rail Road Company, as security for his indebtedness to and accruing out of his dealings with the bank. That upon the faith of such agreement and pledge the bank, during the period named, made discounts and advances to Bigler, who has since that time failed and become insolvent. That the proceeds of the note of the rail road company have been applied to pay the debt of Bigler to the bank. The referee also finds that the money has been duly demanded by the plaintiffs from the bank, who refused to pay the same. He made a report in favor of the plaintiff, upon which judgment was entered, and the defendant appealed.

Two material facts are established by the finding of the referee. 1st. That Farrington & Son were the owners of the note of the rail road company, and that the Park Bank acquired whatever title they have to the same as purchasers or pledgees from Bigler in good faith and for value. We

have been referred to a series of cases, of which *Mowrey* v. *Walsh*, (8 *Cowen*, 243,) is an example, wherein the title of a purchaser in good faith from a fraudulent vendee is held to be good against the claim of the original owner. Thus when the goods were obtained at a sale on credit under a forged recommendation and guaranty, and also when the goods were purchased upon credit and in contemplation of immediate bankruptcy, and afterwards sold to a purchaser in good faith in the usual course of trade, the title of the bona fide purchaser is held valid against the claim of the defrauded vendor. The reason is obvious. Here is an intention to part with the property in the goods, and the fraudulent vendee has all the indicia of ownership; and although the consent of the owner to part with his property in the goods has been obtained under circumstances which entitle him to revoke and rescind it, he must assert and exercise this right of rescission before an innocent purchaser in good faith has acquired his title. In short the sale to the fraudulent vendee is not void but voidable at the instance of the defrauded vendor, and until he exerts his right to avoid the sale the title of a purchaser in good faith from the fraudulent vendee will prevail and be protected. The cases in which this doctrine is found have no analogy to the present. Bigler was not a fraudulent purchaser of the note of the rail road company. He was not a purchaser of any kind. He took the note to the Park Bank, as the agent of the Farringtons, for a particular purpose, and converted it without authority to another and a different purpose. Unless there is something in the nature of the property in question, which excepts it from the operation of the general rule, Bigler could make no sale or transfer in the nature of a pledge which would divest the Farringtons of their interest in the note. They were the owners. Bigler was their agent or messenger. His authority was special, and limited to a particular act, and that was to carry the note to the Park Bank and leave it there for collection. He had no authority to sell it, or pledge it, but simply to deposit

it with the bank to be collected. The title of the owner of property in things movable can be divested and passed over to another only by his own consent and voluntary act, or by operation of law. And if his consent and voluntary act is made and signified by an agent or person acting in his behalf, such agent or person must have the requisite authority from his principal for that purpose. There are exceptions to this rule—exceptions arising out of the nature and character of the property or thing which is the subject of the sale and transfer, and the uses and purposes to which it is devoted. Amongst these are coin, bank bills, checks and notes, payable to bearer, and which pass by delivery, and circulate as currency. The holder of a bill of exchange, check, bank note or other note transferable by delivery, who has acquired it in good faith in the usual course of business and for value, may maintain an action against the maker, drawer, indorser or acceptor, although it may have been lost by or stolen from the true owner. *Miller* v. *Race*, (1 *Burr*. 452,) was an action of trover upon a bank note for the payment of twenty-one pounds ten shillings to one William Fenny or bearer, on demand. The note had been stolen, with other bank notes, from the mail, and came into the hands of the plaintiff for a full and valuable consideration in the usual course of business, and without notice or knowledge that it had been stolen. Fenny applied to the bank to stop its payment, which was done. Afterwards the plaintiff applied to the bank for payment, and for that purpose delivered it to the defendant, a clerk in the bank, who refused to pay the note or redeliver it to the plaintiff. The court held that he should recover. The reason given for the judgment is that bank notes are "not goods," nor securities, nor documents for debts, nor so esteemed, but are treated as money, as cash, in the ordinary course and transaction of business, by the general consent of mankind, which gives them the credit and currency of money to all intents and purposes. So in case of money stolen, the true owner cannot recover it after it has been paid away

fairly and honestly upon a valuable and bona fide considera-
tion. *Peacock* v. *Rhodes*, (*Douglas*, 633,) was an action
upon an inland bill of exchange drawn by the defendants
upon Smith, Payne & Smith, payable to William Ingham or
order, thirty-one days after date. It was indorsed by Ingham
and passed by divers indorsements to one Fisher, from whom
it was stolen and passed to the plaintiff without notice, in
payment of a bill of goods sold to one Brown at the time.
The plaintiff had a verdict, which the court refused to set
aside. In giving the opinion, Lord Mansfield said: "The
holder of a bill of exchange is not to be considered in the
light of an assignee of the payee. An assignee must take
the thing assigned subject to all the equity to which the
original party was subject. If this rule be applied to bills
of exchange or promissory notes, it would stop their cur-
rency. The law is settled that a holder coming fairly by a
bill or note has nothing to do with the transaction between
the original parties, unless perhaps in the single case of a
note for money won at play. I see no difference between a
note indorsed in blank and one payable to bearer. They both
go by delivery, and possession proves property in both cases."
(*See also Chitty on Bills*, 10*th ed.* 255, *and the cases re-
ferred to in the notes.*) I have quoted from the opinions in
these early cases to exhibit the reasons for the rule laid down.
Money stolen cannot be recovered after it has been paid away
fairly and honestly, because it has passed in currency by
reason of the course of trade which creates a property in the
assignee or bearer. A bill of exchange with a blank indorse-
ment is good in the hands of a holder in good faith for value,
though proved to have been stolen from the former owner;
because the owner is not considered in the light of an assignee
of the payee, who must take subject to the equities of the
original parties. And if the rule be applied to bills of ex-
change and promissory notes it would destroy their credit
and stop their currency. This reasoning does not apply to a
promissory note past due and dishonored and which has been

The People v. Brennan.

protested for non-payment, as the note of the Houston and Texas Central Rail Road Company was. Such a note, although it passes by delivery and an action may be maintained upon it by the holder, subject to the equities of the parties thereto, cannot be said to pass in the usual course of trade and business. Such paper does not circulate for commercial purposes, and neither banks nor business men deal in it, or accept it in exchange for money or merchandise. Although it will pass by delivery, and the holder may maintain an action upon it, the substantial elements of commercial paper for the purpose of trade and business are wanting, in the absence of an unqualified obligation of the parties to it to pay at maturity. The holder takes it in the light of an assignee of the person from whom he receives it, rather than an indorsee according to the usage of trade, and he therefore takes just such title and no other as his assignor had to it at the time of the transfer. As James Bigler had no title to the note he could transfer none to the Park Bank:

For these reasons I think the judgment should be affirmed.

[DUTCHESS GENERAL TERM, May 11, 1863. *Brown, Scrugham* and *Lott,* Justices.]