## QUIMBY v. STODDARD.

A *bona fide* holder of a promissory note payable to bearer, or indorsed in blank, taken after it becomes discredited, takes it subject not only to any equities in favor of the maker against the payee, but also subject to any defect in the title of the person from whom he receives it.

WRIT OF ENTRY, to recover mortgaged real estate in Columbia. Facts found by a referee. June 7, 1877, the defendant made and delivered to Zilpha A. Titus his six promissory notes, amounting in the whole to $650, payable to her or bearer, one in the month of January of each year, beginning with January, 1879, and ending with January, 1884, with interest annually, and secured them by a mortgage of the same date to Mrs. Titus, covering the land described in the writ. A year or two later Mrs. Titus handed the notes and mortgage to her son-in-law, Harrison Annis, with the request that he deposit them for safe keeping in the safe of E. H. Williams, then a trader in Colebrook. Annis put the notes and mortgage, with two notes of his own and other papers, into an envelope, sealed them up, and having written his own name on the back of the envelope, delivered the package to Williams to be put in his safe, for the only purpose of securing their safety. About June 7, 1882, Annis, by request of Mrs. Titus, procured the package from Williams and carried it to her, and interest was endorsed to June 7, 1882, on the notes. Within a short time afterward she handed the papers back to Annis, requesting him to return them to Williams as before. This he did, putting them in an envelope, which he sealed and endorsed with his own name, and handed to Williams to be placed in his safe as before.

Mrs. Titus died testate in July, 1887. The executor of her will called on Williams for the notes, to be appraised and put into the inventory of her estate. Williams declined to give them up unless he would return them; and he claimed to hold them as collateral for claims against Mrs. Titus amounting to $168.52. (That he so held them was not true.) The executor took the notes, put them into the inventory, and returned them to Williams, as he agreed to do upon Williams's claiming a right to hold them as above. The above described notes and mortgage constituted the whole of the estate, as shown by the inventory.

The notes and mortgage were, by a residuary clause in the will, given to the defendant's wife. The defendant offered to prove that to clear them from any claim by creditors of the estate, he paid in full all the debts, including that to Williams, and specific legacies given by the will amounting to $629.82. About February or March, 1887, Williams fraudently broke open the sealed package left with him as above stated, abstracted therefrom the Stoddard notes and mortgage, and pledged them to the plaintiff, to hold as collateral security for a loan which he had obtained from her on the understanding that he was at once to make her secure. Williams assured her that he was the owner of the notes and mortgage in question, as well as of others pledged at the same time. He requested her to say nothing about the fact that he had put the securities into her hands; and the defendant claimed that this fact, together with others to be referred to,

ought to have put her upon inquiry as to his title to the notes in question. The referee is of opinion, however, that the evidence does not warrant such a conclusion; and the finding is, that the plaintiff took the notes and mortgage from Williams as collateral security for her loan to him without knowledge or suspicion that his title to them was not good.

A short time after the death of Mrs. Titus, Williams went to the house of the plaintiff in Pittsburg and told her that he wanted to take the Stoddard notes to have them appraised and allowed against the estate. She let him take them, and in about three or four weeks afterwards he returned them to her, saying they were allowed and were all right. The referee is of opinion that this act was so performed by Williams that the plaintiff's suspicions as to the validity of his title to the notes and mortgage were not in fact aroused; that she had no knowledge of his actual and intended fraud, and did not knowingly or intentionally participate therein.

It is true, however, that her act in allowing him to take the notes and mortgage enabled him to conceal his misappropriation of them by furnishing them to the executor to be appraised. If she had refused to part with them, the fraud of Williams in removing the papers from the wrapper and disposing of them would doubtless have been discovered; and the defendant offered to prove that the reason he paid the debts of the estate was to discharge any claim of creditors upon the notes and mortgage, on the understanding that they were the property of the estate, and would pass to his wife by the will when the debts were paid. The defendant claimed that his payment of the debts of the estate was the consequence of this act of the plaintiff in allowing Williams to take the notes and mortgage, and that the plaintiff is estopped thereby to claim that her title to them was thereafter valid.

The substance of the finding is, that everybody connected with the transactions detailed, except Williams, was in fact honest; and the question is submitted to the court which one must suffer by the fraud of Williams.

*Edgar Aldrich, James W. Remick,* and *Bingham & Bingham,* for the plaintiff.

*James I. Parsons,* for the defendant.

SMITH, J. The notes in controversy, given by the defendant in 1877, were the property of Mrs. Titus when the plaintiff received them from Williams as security for her loan to him. They had been deposited by Mrs. Titus with Williams for safe keeping merely. Being payable to Mrs. Titus or bearer, they would pass without endorsement to a *bona fide* holder, before

maturity, without notice of any defect in Williams's title. The plaintiff received them in 1887, more than eight years after the first and more than three years after the last note became due. The interest, payable annually, had not been paid since 1882. All the notes having been long discredited, were therefore subject to any defence which might have been set up by the defendant against Mrs. Titus, the payee. It is not claimed that as against the payee the defendant had any defence. The plaintiff took the notes for an adequate consideration, without notice of any defect in the title of Williams, as the referee has found ; and the question is which party, as between the plaintiff and the executor of the will of the payee, has the better title. However the law may be held in some other jurisdictions—and the authorities are numerous and conflicting—the question cannot be regarded as a doubtful one in New Hampshire. A *bona fide* holder of a promissory note payable to bearer, or indorsed in blank, taken after it becomes discredited, takes it subject not only to any equities in favor of the maker against the payee, but also subject to any defect in the title of the person from whom he receives it.

*Emerson* v. *Crocker*, 5 N. H. 159, decided in 1830, is exactly in point. Emerson being the owner of two promissory notes payable on demand, deposited them with one Pratt for collection after they had become discredited. Pratt delivered the notes to Crocker in payment of his indebtedness to him, who collected the notes of the. maker. In a suit by Emerson against Crocker for the recovery of the amount of the notes, it was held that Crocker was not entitled to retain the money as against Emerson. The court said that " the rule that whenever one of two innocent persons must suffer by the act of a third, he who has enabled such third person to occasion the loss must sustain it . . . . holds only in cases of innocent holders into whose hands the note came in the regular course of business, before it became payable. If the note be overdue at the time the agent so transfers it, the person who takes it must stand in the situation of the agent." And it was further said, that the rule, that if a note is negotiated after it is over due, notice of its infirmities is to be presumed from that circumstance, may be applied with equal propriety in other cases as well as against the maker.

In *Farnham* v. *Fox*, 62 N. H. 673, 675, the doctrine of *Emerson* v, *Crocker* is approved. In that case an overdue note of the plaintiff entrusted to her husband was fraudulently transferred by him to the defendant Fox. This court said,—" Taking the note dishonored, he took it subject to any claims or defences existing while it was in the hands of a prior holder, and he was put on inquiry as to any such defences and equities in favor of a prior holder, and as to any want or defect of title in the person from whom he received it. He took no greater or better title

than the plaintiff's husband had. To have acquired a better title he must have become possessed of it before it was overdue, or received it from one who became a *bona fide* holder for value before it was due." See 1 Dan. Neg. Ins., *ss.* 724, 782; 2 Pars. Notes and Bills 279, notes, and cases cited; *Foley* v. *Smith,* 6 Wall. 492; *Wetherell* v. *Smith,* 9 Texas 622; *Farrington* v. *Bank,* 39 Barb. 645; *Osborn* v. *McClelland,* 43 Ohio St. 284; *Towner* v. *McClelland,* 110 Ill. 542; *Greenwell* v. *Haydon,* 78 Ky. 332; *Chase* v. *Whitmore,* 68 Cal. 545; *Clark* v. *Sigourney,* 17 Conn. 511.

*Clement* v. *Leverett,* 12 N. H. 317, and *Tucker* v. *Bank,* 58 N. H. 83, are not in conflict with *Emerson* v. *Crocker* and *Farnham* v. *Fox,* but, on the contrary, confirm the doctrine of those cases. In the first case the bills of exchange entrusted to Burley, and in the second the bond entrusted to Cogswell, had not matured when negotiated by them in fraud of the respective owners, and of course the purchasers, having no notice of the want of title in Burley and Cogswell, and taking the securities in the due course of business, were entitled to hold them against the real owners under the law as recognized everywhere.

In this case Williams was a mere naked depositary of the notes, holding them merely for safe keeping. The plaintiff taking them long after they had become discredited, although, as the referee finds, without any notice of the infirmity in Williams's title, was put upon inquiry, and if she had inquired either of Stoddard or of Mrs. Titus, she would have discovered Williams's entire want of title to the notes. She acquired under the settled law of this state no greater title than he had, and as he had none, she acquired none as against the payee.

Whatever considerations may have led to the adoption of a different rule in some other jurisdictions, no sufficient reason has been shown for departing from the law as it has been established in this state for more than sixty years, and which has worked practical justice to its inhabitants.

　　　　　　　　　　　　　*Judgment for the defendant.*

CLARK, J., did not sit: the others concurred.