The cause was argued at the last March term, and being corn *501 tinued for advisement, the opinion of the Court was now delivered by
Parker, C. J.
The nonsuit, in this case, was ordered upon the strength of two decisions of this Court, in which *it was settled that, when a negotiable instrument had [ * 619 ] been paid and taken up by any party to it, it ceased to be negotiable; and this, since the decisions referred to, has been taken to be the law in this commonwealth.
The first case alluded to is that of Blake vs. Sewell, a short ac count of which is published in an appendix to the third volume of our reports; the case having been decided in the year 1799, which was before our series of reports commenced. The note on which the action was brought was made by Wilson to Sewell, or order, and endorsed by Sewell to Pomeroy, who endorsed it in blank, and delivered it, for a valuable consideration, to Rogers, who lodged it in the Bank of the United States for collection. It was there paid by Pomeroy, who took it up, and delivered it, for a valuable consideration, to the plaintiff in the action, his endorsement and that of Sewell remaining on it. There were several points of defence in the action; but that upon which the Court decided was the general proposition, that the note, having been paid at the bank by Pomeroy, ceased to be negotiable; and the authority, upon which the Court, relied, was the case of Beck vs. Robley.
The other case, decided by this Court, is that of Boylston vs. Greene. In this case the defendant was payee, and first endorser of the note. It had been lodged in the Norwich bank by Lathrop, the endorsee, who paid and took it up, and then assigned it, for a valuable consideration, to the plaintiff in the suit. The case of Blake vs. Sew-ell was relied upon in the defence; and the Court decided that the case came within the principle settled in the former case, and that the plaintiff could not recover.
In the opinion given by the Court in the last case, pretty strong intimations were thrown out, that they yielded reluctantly to the authority of Blake vs. Sewell; especially as the whole effect of preventing the plaintiff from recovering would be to give occasion to an action in the name of Lathrop, for the benefit of his assignee, the plaintiff in the suit.
* We have been called upon now to revise these de- [ * 620 ] cisions; and some authorities have been cited, and some arguments advanced, which have induced us to look more thoroughly into this question than either we or our predecessors seem to have done on the former occasions.
There is no doubt that in England, at this day, the proposition which has been received here without qualification, that a nego *502 tiable note, once paid, cannot afterwards be transferred, is restrained to cases, where, by such transfer, some party to the bill or note might be prejudiced, or troubled with a suit, who ought to be discharged. As, for instance, if there be several endorsers, none shall be allowed to transfer it but the last; because, if the note is taken up by any prior endorser, and again put in circulation by him, the subsequent endorsers may be exposed to a suit by the new assignee. But where no such consequence will follow, an assignment by the party taking up the bill is lawful, and the assignee may maintain an action upon it in his own name.
This seems to be a reasonable distinction; and it appears by an examination of the case of Beck vs. Robley, upon which alone the case of Blake vs. Sewell rests, that nothing more was decided than that an assignment of the latter character, viz., one which might prejudice some party to the instrument, who was legally discharged, could not be made. The reason which finally satisfied Lord Mansfield in this case, he having thought at the trial that the action was maintainable, was, that if the assignment was good, Hodgson, in whose favor the bill was drawn, and who had returned it to Brown, would be liable. Brown was the drawer of the bill, and when it was returned by Hodgson, he paid him the amount; Hodgson’s name having been before endorsed upon the bill.
The true character of this case seems not to have been considered when the attention of the Court was heretofore drawn to this question. Certainly the only point settled by it is, that where [ * 621 ] the putting of the bill or note into circulation *anew will endanger a party who ought not to be charged, then it cannot be negotiated.
The case reported by Sergeant Wilson cannot be law if the decision in the case of Beck vs. Robley went so far as has heretofore been supposed by the Court. In this latter case the payees of a promissory note endorsed it to Gomez, the plaintiff in the action. They took it back again, and paid the plaintiff the amount. After-wards, upon a new consideration, they again passed it to the plaintiff ; and although the objection was taken that the note had been once paid, the plaintiff recovered. Now, this is perfectly consistent with Beck vs. Robley, according to the view of that case as above given; but wholly inconsistent with it in the view that has been taken of it heretofore. It may be justly inferred that, as the case in Wilson was not even cited, much less overruled, in the case of Beck vs. Robley, the limited is the true construction of that case.
But a late case in the King’s Bench has brought these cases distinctly before the court, and has settled the law in that country, as *503 the plaintiff in this action would wish to have it settled here. In the case referred to, one Pywell drew his bill on Lawrence, payable to himself or order. Lawrence, the defendant in the action, accepted the bill. It was then just like a promissory note payable to Pywell or order. He endorsed it to Taylor, and Taylor to Barnett, who paid it to his bankers. When it became due, the bankers presented it; but not being paid, it was returned to Barnett. A week after this, Pywell, the first endorser, called on Barnett, and paid the amount. Barnett struck out his and Taylor’s endorsements, and delivered the bill to Pywell; and six months after this Pywell paid it to Callón, the plaintiff. The case of Beck vs. Robley was cited, but was held not to be like the principal case; because in this there was not any name left upon the bill to be prejudiced. All the judges, in giving their opinions, deem it necessary to distinguish the case from that of Beck vs. Robley; which they do effectually by showing that Hodgson’s name was * left [*622] on the bill; whereas, in the case before them, the endorsements subsequent to Pywell’s were struck out.
Now, in our cases, the assignment was made by the last endorser, ' so that no one could be prejudiced who was not legally bound to pay; and, in the case before us, it was the payee himself who took up the bill, there being no endorsement upon it but his own ; which is making it precisely like the case of Callon vs. Lawrence. So that in England, such an action as the one now before us, would unquestionably be sustained. It may not be amiss to remark that among the justices of the King’s Bench, who decided this case, is Bayley, the author of one of the most approved treatises upon bills of exchange; in which book, long before this case came up, he had stated the law to be as adopted and sanctioned by the court; having given the construction to Beck vs. Robley, which is now thought the true one.
In this state of things, the law being clearly settled in England, the cases in our court having been decided upon a mistaken consideration of the case of Beck vs. Robley, and reason and convenience being altogether in favor of the English doctrine as now understood ; and, furthermore, it being settled here that the interest in the note would pass to the plaintiff in this action, so that the only effect of adhering to the former decisions would be to oblige him to bring his action in the name of his assignor; we have only to consider whether it is expedient to overrule the former decisions.
The importance of adhering to decisions once deliberately made will always be duly estimated by judicial tribunals. Every motive, personal and public, is in favor of it. But when a whole bench shall be unanimous in their opinion that any former decision of their *504 own or of others is wrong, the duty is as imperative to overrule it, as it is to adhere, where there may only be doubts of its correctness. This is especially proper in cases which may be overruled [ * 623 ] without danger to commerce, or any * infringement of established rules of property. And the opinion, which we have now come to, makes no other change than to give a right of action directly, where it might be had indirectly, in a case where no one can possibly be injured.
The nonsuit is set aside, and a new trial granted (8).

 [See note to Blake vs. Sewell, 3 Mass. 556.—Ed.]