The opinion of the Court was delivered by
O’Neall, J.
In this case, it appears that John D. Wright made his note with one Robert McCann, to John Wilson, or bearer, for fifteen hundred dollars, due 1st January, 1852. Before the note became due, the payee, Wilson, for a valuable consideration, transferred the note to Jesse W. Norris, and indorsed it. Norris, not obtaining payment when the note fell due, sued, separately, the maker, J. D. Wright, and also the indorser, John Wilson, and recovered judgments. Wilson paid the amount of the judgment against himself, and took an assignment from Norris of the judgment against Wright, and is about enforcing th.efi.fa. This is an application to have satisfaction entered on the judgment against Wright, on account of the payment by Wilson of the judgment against himself.
How that, which was never intended to be satisfaction, and which by the assignment is conclusively shown was intended to operate in discharge of the indorser merely, and as a purchase of the judgment against the maker, can have the implied effect of satisfaction of that judgment, I never have been able to comprehend. I have never believed that the law was so unreasonable as to imply anything against truth. It and justice have been by me always regarded as the foundations of implication, or, as Comyn, in his 1st yol. of Contracts, p. 5, tells us, of implied contracts; they are “ such as reason and justice dictate.” Testing this application by that rule, it cannot be that reason ever would draw such a conclusion, as that satisfaction should be made against a plain intention. So it cannot be justice that he, who is ultimately liable for a debt, should be discharged by a payment made by one liable after him, to discharge himself alone, and with the intent to keep the debt still against him who was liable before him. So much for general reasoning.
*402 It is necessary now to clear the case of some decisions made in this State, as it is supposed arriving at a conclusion in favor of the application. It is very true, in Noonan vs. Gray, (1 Bail. 437,) the first principle extracted by the very accurate reporter would seem to favor the notion, that the judgment against the maker would be extinguished by the payment by the indorser of the judgment against him, and that even an assignment would not prevent that effect. But it will be seen he speaks of a subsequent assignment, not one made contemporaneously with the payment. That may constitute a distinction between that case and this, sufficient to prevent its extension; and certainly it should not be extended, for the principle laid down by the reporter was, I know, not satisfactory to the bar, or the bench. 1 very well remember it was pronounced to be unsound by one of the most eminent lawyers in the State, (Mr. Petigru,) in the argument before Johnson, Harper and myself, in the Court of Appeals at Charleston, in Allston vs. Allston, 2 Hill, 362, (a) and I understood the whole Court as acquiescing, when it was ruled, in that case, that a note was not extinguished by renewal so as to affect the rights of an indorser under a security. The case of Noonan vs. Gray, however, really never decided any thing beyond the point, that an attorney at law could not make a valid assignment of a judgment belonging to his client; all beyond that is an obiter dictum. The case of Davis vs. Barcley, 1 Bail. 140, really decides nothing more than what is conceded by every one, that when a plaintiff has judgments against two, for the same cause of action, the payment of either, as to him extinguishes the other. The term satisfaction is used in the opinion, but clearly it was a misapplication ; it should have been said that, as to the plaintiff, the judgment against one was extinguished by the satisfaction of the judgment against the other.
The case of the Bank vs. Moseley, 1 Strob. 414, was, I think, most unfortunately decided on the authority of Noonan vs. Gray; *403 it goes, however, no further than that case, and cannot, no more than its parent, affect this case.
I now take up this case, as it stands before us ; and it is first necessary, perhaps, to discuss and decide, how far the payment of a note, or bill, would be extinguished, as against the maker? drawer, acceptor, or prior indorsers, by a payment by a party liable subsequent to them. It was held, in Bacon vs. Searles, 1 H. B. 88, in conformity to Beck vs. Rdbley, note a to the same case, that when a bill was drawn by A. on B., payable to A.’s order, and by him indorsed to C., and accepted by B., and not being paid by the acceptor, was paid by the indorser and drawer, it was a discharge of the bill, and no action could be maintained on it. But the case of Williams et al. vs. James, in 1848, 3 Law Report, 344, put the question in its proper light. In that case, a bill was drawn by the Messrs. Phillpot, payable one month after date, to their own order, and indorsed by them to the plaintiffs; it was accepted by the defendant; the bill not being paid at maturity, it was presented to the drawers, and paid by them, and they redelivered it to the plaintiffs, with instructions to sue on it. The Court held that the plaintiffs were entitled to recover, inasmuch as the drawers were also payees of the bill, and had therefore the right to be paid by the acceptor. Lord Campbell, C. J., said, “Primafacie payment by the drawer will operate for the benefit of the acceptor, but it is in the power of the drawer, when he pays the bill, so to limit it as to provide the remedy against the acceptor. He might, under these circumstances, take back the bill, and sue upon it in his own name, or he might pass the bill to another person to sue upon it for him, and to the indorser whom he has paid as lawfully and reasonably as any other person.” The Court, Patteson, Coleridge and Erie, concurred.
In Guild vs. Eager, 17 Mass. R. 615, it was ruled, that a note paid by the payee and indorser was not extinguished, but might be recovered against the maker. In Byles on Bills, 174, (a) *404 it is'said, “ Obtaining judgment on a bill or note, is an extinguishment of the original debt as between the plaintiff and defendant •, but it alone, without satisfaction, is no extinguishment as between the plaintiff and other parties, whether prior or subsequent to the defendant.” It hence appears clear, that the payment of the note by Wilson to Norris, would not have discharged Wright, the maker, (and especially so, if from the transaction it was apparent that it was not intended to be a satisfaction as to him,) and that Wilson, after such payment, could have sued on the note himself, or returned it to Norris, or transferred it to some other person.; and that suit would have been successfully ■maintained by either. A recovery of judgment does not alter the' rights of the parties. The plaintiff, Wilson, when he paid the judgment against himself, took an assignment of the judgment against Wright. This showed conclusively that he did not intend to satisfy or extinguish that judgment; and hence there can be no legal implication that satisfaction or extinguishment resulted. It has been conceded here, that if the plaintiff, Wilson, was in Equity, there would be no doubt he would be subrogated to Norris’s rights, and that he would be decreed (unless there was some satisfactory showing that the judgment as to him ought not to operate) to stand as the assignee of Norris. If it had not been conceded, the case of Perkins vs. Kershaw, 1 Hill, Ch. 344, would, beyond all doubt, establish the position. The plaintiff, Wilson, has now legally all the rights which Equity could give him; he is the assignee of the judgment, and under the Act of 1816, is entitled to sue on it, in his own name, (6 Stat. 33.) How can this Court, under rule, undertake to defeat that plain legal right by a false implication, and against the plaintiff’s plain and acknowledged Equity ? In the case of Clason vs. Morris, 10 Johns. R. 524, it appeared, that C. & D. indorsed the note of S. as security to L., and L. sued the maker and then the indorsers, and recovered judgments against them ; C. & D. paid to L. the debt, and took an assignment of the judgment against S. The Court of Errors in New-York held, that C. & D. stood in the place of L., and *405 might avail themselves of the judgment, to recover the money-paid. This, it is true, was in an Equity cause, but it was the statement of a legal principle. Judge Thompson, at page 546, states with great clearness the doctrine thus : “ The judgment assigned by Low to the appellant must, I think, be considered as unsatisfied, and as a legal lien on the property. Had the judgment against the indorsers been paid and discharged, without at the same time taking an assignment of the judgment against the principal, it might have operated as a satisfaction of that judgment. But the appellant stands before the Court as a purchaser and assignee of the judgment, and the money paid by him was the consideration of the assignment. The judgments against the principal and the security are separate and distinct. I see no reason why the security may not purchase a judgment against the principal as well as any other person.” These words of Judge Thompson describes the very case before the Court, and certainly clearly maintain the rights of Wilson, the assignee of Norris. But supposing that the assignee, Wilson, had to rest on his equitable right to be subrogated to Norris’s rights, I apprehend, on rule, the Court of Law would never defeat that Equity by ordering satisfaction ; for I hold that the Court of Law does, on a rule, recognize, and even enforce equitable rights. Instances of that kind will be seen in Tolbert vs. Harrison, 1 Bail. 599; Ex parte Carle, Dud. 111, and Cooper vs. Scott, 2 McM. 150. The last is almost this case; for there the surety was permitted to contend in the name of the plaintiff, that the funds collected by the sheriff, under fi. fa., should go in payment of the judgment against the principal, notwithstanding the plaintiff, as will be seen at p. 151, admitted that he was satisfied, that is, he had been paid by the surety.
The Act of 1849, 11 Stat. 556, which provides that the “payment of a debt secured by judgment or decree in Equity, by a surety, shall not operate as a satisfaction of such judgment or decree against the principal debtor; but by such payment, the said surety shall be entitled to all the rights and privileges of *406 the plaintiff or complainant in said judgment, or decree in Equity,” was, I have no doubt, passed to provide for the case where a joint judgment was recovered against the principal and surety, and it was paid by the latter. But its terms are large enough to cover the case of an indorser, for he is a surety; he is liable for the debt, default, or miscarriage of another, and hence I would not hesitate, if it were necessary, to hold that the rights of the assignee, Wilson, were protected by that Act. Its reason and spirit show plainly that he, if he was not even within its letter, ought to be protected.
It has been argued here, if Wilson is allowed to hold the judgment of Norris, it cuts off Wright from all chance of de-fence which he might have had against Wilson on the note, and which he could not set up against Norris, to whom it was negotiated before due. Nothing of this kind, however, appears by affidavit, and which might have led to an issue to show whether the assignee ought to enforce the judgment. The defendant, Wright, is not without his remedy, if it be true that he has any just defence against Wilson, and which he could not have set up against Norris. Equity will, I have no doubt, give him the proper relief. But he, not Wilson, must seek the aid of that forum; for if satisfaction had been ordered him, and Wilson forced into Equity, it is very doubtful whether junior liens might not have covered all Wright’s property. As it is, they will litigate equally; the lien of the judgment will remain until it be shown that the judgment should be vacated or enjoined by some proceeding at Law or Equity. The motion to reverse the decision below is granted.
Withers, Whitner, Glover andMuNRO, JJ., concurred.
Wardlaw, J.
I agree only to the result of this opinion; that I rest upon a construction of the Act of 1849, which I think embraces all sureties.

Motion granted.

(a) Vide 2 Rich. 428.

(a) See Marginal page, 225 ; and see also Bayl. on Bills, 352.