## ELIHU NORTON *v.* SOLOMON DOWNER.

### *Promissory note.  Evidence.*

The defendant executed a promissory note to the plaintiff, but at the same time it was agreed by a separate instrument in writing between them that the defendant was not to be liable to pay the note to the plaintiff, but was in fact merely a surety for him; *Held,* that it was competent for the plaintiff to show that subsequently for a good consideration the parties agreed by parol to sustain the same relation to each other in connection with the note, as was imported by its terms ; and that such a subsequent agreement having been proved, the plaintiff was entitled to recover of the defendant upon the note.

The plaintiff having testified that such an agreement was made in the presence of H., and that H. at the time made a written statement of the mode of settlement of the parties' accounts, upon the basis of which such agreement was made; *Held,* that it was competent for the plaintiff to introduce in evidence, as corroborative of his own testimony, such written statement.

The defendant introduced in evidence minutes of the testimony of H., at a former trial of the same case, since which time H. had died.  The plaintiff, for the purpose of impeaching such testimony, offered to show declarations of H., inconsistent with his story as recited in the minutes; *Held,* that such declarations were competent testimony, notwithstanding H. was not inquired of at the previous trial in regard to such declarations.

When the payee of a promissory note has once transferred it, but by the failure of the maker to pay it, has been compelled to take it up, it is still a valid and negotiable note in his hands as against the maker.

ASSUMPSIT upon a promissory note dated Feb. 1, 1855, for four thousand dollars, signed by the defendant and payable to Chester Baxter, or order, and by him endorsed to the plaintiff. Plea, the general issue, and trial by jury at the June Term, 1859, —ALDIS, J. presiding.

On trial, the plaintiff gave in evidence the note declared upon.

The defendant then gave in evidence an agreement in writing dated March 11, 1854, signed by Chester Baxter, which was as follows :

" Sharon, March 11, 1854.  Whereas Solomon Downer has given this day a note to me for four thousand dollars, payable in four months with usual grace, and whereas I have this day indorsed said note to Henry Hubbard, and said Hubbard has left in my hands the above described note and taken my receipt for

the same, and whereas it is understood that the note aforesaid is not to be paid by said Downer, but the avails are to be applied on certain demands said Downer has against the estate of S. F. Belknap, a part of which claim belongs to me, and whereas I have paid said Downer two thousand dollars and have taken his two notes of one thousand dollars each, now if the avails of the four thousand dollar note are applied on the demand against Belknap's estate, as expected, then said Downer is to have said note of four thousand dollars given up to him, and also the two notes of one thousand dollars each said Downer has given me, and the other two thousand dollars now in my hands are to apply on my share of the demands against said S. F. Belknap's estate. Said Henry Hubbard has paid me the amount of said Downer's note of four thousand dollars, and I have paid over one-half of the same to Downer and taken his two notes, as above stated; the other two thousand dollars is now in my hands, to be applied on my share of Downer's claims against S. F. Belknap's estate as aforesaid.

(Signed)      Chester Baxter."

It appeared that Henry Hubbard and Solomon Downer were on the 11th of March, 1854, and for some years previously had been, joint administrators upon the estate of Sewall F. Belknap, and that Downer and Chester Baxter were then joint owners of claims to a large amount, which had been allowed by the commissioners upon said estate, and that no dividend had at that time been declared upon said estate, and that the note for four thousand dollars mentioned in the agreement above recited was not paid at maturity, but was surrendered by Hubbard, and a new note taken in the same form and on the same time and for the same purpose and intent, and that the second note thus executed was not paid at maturity, but was renewed as the previous one had been; and that this latter note was not paid at maturity, but was renewed by the execution on the first day of February, 1855, of the note now in suit, which was in the same form with the previous notes and executed for the same purpose and intent; that a dividend was declared in October, 1854, upon the estate of Belknap, and it then became certain that the four thousand dollars mentioned in the agreement of March 11, 1854, and in the said several

notes, must be paid to Hubbard, and could not be applied on the demand against Belknap's estate owned by Baxter and the defendants ; and that Hubbard procured four thousand dollars at the Bank of Royalton upon his own personal note, and deposited the note now in suit at the time of its execution with the bank as collateral security for his own note, and that after the note in suit had fallen due, Baxter paid it, and received it from Hubbard, and afterwards caused this suit to be brought upon it, in the name of the present plaintiff, as a nominal party, but for the sole benefit of himself; and in respect to all these facts there was no question.

The testimony on the part of the plaintiff tended to prove that at the time of the execution of the first note, Baxter was informed by Hubbard that he should rely upon him, Baxter, to pay the amount whenever it should become necessary to require payment.

It was conceded that Henry Hubbard had been a witness on a former trial of this case, and had been sworn and testified ; that he was a witness called by the defendant, and had since died. The defendant offered the minutes of his testimony on such former trial, taken by the presiding judge, and proved the same, and they were admitted. These minutes were read to the jury. The defendant then rested his case.

The plaintiff then offered to show that on the 23d day of March, 1855, after the note in suit had been executed, and while it was held by the Royalton Bank as above stated, a settlement was had between the defendant and Baxter in respect to their joint interest in the claims held by them against Belknap's estate and in respect to other dealings and demands between them ; that Downer had received the whole amount of the dividends coming to him and Baxter, upon their demand against Belknap's estate, and had not paid any portion of the same to Baxter ; that in the settlement of March 23, 1855, and as a part of the same, the sum of four thousand dollars mentioned in the agreement of March 11, 1854, was credited by Baxter to Downer, and Downer's two notes of one thousand dollars each to Baxter, mentioned in the agreement of March 11, 1854, were charged to Downer and given up to him, and it was thereupon agreed between them that

Downer should pay the note in suit, and that thereafter as between Baxter and Downer, Baxter should be held merely as an indorser for Downer on the note, and that the agreement of March 11, 1854, should be given up to Baxter. In connection with this offer of evidence, the plaintiff offered a statement in writing of such settlement made at the time by Henry Hubbard, who was then present as the mutual friend of both Baxter and Downer. To the admission of this evidence the defendant objected, but the court admitted it, and the defendant excepted.

The plaintiff thereupon introduced Baxter as a witness, who gave evidence tending to prove the facts which he had offered to prove as above stated.

The plaintiff also, solely for the purpose of impeaching the testimony of Hubbard at the former trial, as shown by the minutes of the presiding judge, offered to show, and notwithstanding objections by the defendant, was allowed by the court to prove for that purpose only, declarations made by Hubbard at the time Baxter paid the note in suit, which tended to show that he understood the arrangement between Baxter and the defendant in relation to their respective liability upon that note to be entirely different from that which, it appeared from his former testimony, he understood it to be.

To the admission of this evidence the defendant excepted.

The defendant insisted and requested the court to charge the jury that it was not competent, after the note in suit had been issued and put in circulation, so to change the relation of the parties by any agreement between themselves, as still to leave the note negotiable; and that there was no legal testimony in the case, on the part of the plaintiff, tending to prove that the relation of the parties to each other in respect to the note in suit, had been so changed, and that if the relation of the parties to each other had been thus changed, the payment by Baxter would extinguish the negotiability of the note.

The court declined to charge the jury as requested, but did charge as follows :

1. That the proof of the execution and delivery of the note by the defendant to Baxter, the payment by Baxter and the indorse-

ment and delivery by Baxter to the plaintiff, made a case *prima facie* for the plaintiff.

2. That the proof by the defendant of the contract of March 11, 1854, and the facts agreed to by both the plaintiff and the defendant in regard to the same, (which were referred to by the court as hereinbefore stated,) constituted a sufficient defence to the suit, (if taken alone and without the further facts claimed to be shown by the plaintiff,) because they operated to extinguish Baxter's right to sue as indorsee of the note and threw him upon another remedy, viz., to sue upon his two notes of one thousand dollars each against Downer, and that if the case had stopped at this point the defendant would be entitled to a verdict.

3. But that if Baxter and the defendant, in the settlement of their claims against each other, did make such an agreement on the 23d of March, 1855, as the plaintiff's testimony tended to show ; and if in fact they did then settle on that basis, and Baxter did credit Downer, in the settlement, for the four thousand dollars and interest, and give up to him the two notes of one thousand dollars each, upon the ground that Downer was to pay the whole of the four thousand dollar note and to give up the contract of March 11, 1854, then the plaintiff would be entitled to recover upon the note, but that the burden of proof on this point rested upon the plaintiff.

To the omission of the court to charge the jury as requested and to the charge as given, the defendant excepted.

*P. T. Washburn*, for the defendant.

*D. C. Denison* and *L. B. Peck*, for the plaintiff.

POLAND, J. The plaintiff's action is founded upon a note given by the defendant as maker, to Chester Baxter, or order, and duly endorsed by Baxter to the plaintiff.

The execution of the note by the defendant, and its endorsement by Baxter, being conceded, or proved, the plaintiff established an apparent right of recovery.

The defendant then proved by the written agreement of March

11, 1854, and evidence showing the relations between the defendant and Baxter, and the circumstances under which the written agreement was made, and the note of the same date executed, that though the defendant appeared upon the face of the note to be the party primarily liable to pay it, and Baxter appeared to be entitled to receive the payment, that in fact his liability was only that of a surety upon the note for Baxter, and that Baxter had no right to call on him for payment, and that if he was compelled to pay the note to some third party, he would have the right to recover the amount from Baxter as money paid for him. That this was the original position of the parties to the note and that Baxter could not have then compelled the defendant to pay it, was conceded upon the trial, and it was also conceded that the note was endorsed by Baxter to the plaintiff for collection merely, so that the defendant can avail himself in this action of all defences he could have made, if sued in the name of Baxter. The plaintiff, after the original relation of the parties to this note had been shown, gave evidence tending to show that subsequently a new arrangement was made between Baxter and Downer, by which in a settlement of their dealings Baxter allowed the defendant the sum of four thousand dollars, and upon which the defendant agreed that he would assume the payment of this note as maker and principal, and that thereafter, instead of his standing upon the note as a surety merely for Baxter, he became the principal, and Baxter a mere surety for him.

In short the arrangement which the plaintiff claims was made and which the jury under the charge found proved, was equivalent to a payment of the amount of the note by Baxter to Downer, and an agreement on the part of Downer to pay the note. Some question is now made as to the power of the parties thus to change their relations upon this note, and thus make the party a principal who was before but a surety. But upon this point we have no doubt. The very ground of defence set up by the defendant is, that though upon the face of the note he appears to be maker and principal, still that the real contract and agreement between him and Baxter was that he was but a surety and Baxter the real principal. If it were competent for the defendant to show such agreement, (as we have no doubt it was,) it would be

very singular that the plaintiff might not show that upon good consideration this relation was changed, and that the defendant agreed to assume and hold in fact the same legal relation and liability upon the note, which the note itself imported. It was equivalent to the execution of a new note by the defendant. This question was really before the court when this case was heard two years ago, and was passed upon, and the question is now rather suggested than insisted upon by the defendant's counsel.

Two objections are raised as to the admissibility of evidence given on the trial; one as to the admissibility of the paper made by Governor Hubbard at the interview and settlement between Baxter and Downer; the other as to the admissibility of the declarations of Governor Hubbard in contradiction of his testimony as proved by the minutes of Judge Underwood upon the former trial. The paper made by Hubbard not being a contract executed, or a paper made by the parties, was not admissible as an independent piece of evidence, nor was it offered as such, but only in connection with the evidence of Baxter, as tending to strengthen and corroborate his testimony, and to show what was really settled and adjusted between the parties, at the time the plaintiff claims Downer assumed to pay the note in suit. The testimony of Baxter was that Hubbard was present at such settlement, acting as the mutual friend of both parties, that he made a statement or list of the claims presented on both sides, in the presence of the parties, and that the parties settled according to the statement of claims upon the paper, and solely upon that basis.

In connection with this evidence there could be no doubt of the admissibility of the paper, any more than if it had been made by the defendant himself, though perhaps not entitled to the same weight. The evidence tended to establish that this paper was made in the presence of the defendant with his assent, that he recognized its correctness by giving his note to Baxter for the balance apparently due him on the statement thus made. That the paper, if properly authenticated as the basis of a settlement between Baxter and Downer, tends to show that Baxter allowed to Downer the amount of this four thousand dollar note, admits of no question.

The objection to the evidence of the declarations made by

Governor Hubbard, claimed to be contradictory to and inconsistent with his testimony given upon a former trial, as shown by the judge's minutes, we understand to be based upon the ground that the witness had no opportunity afforded him to explain or qualify such imputed contradictions of his testimony. It is a well settled rule of practice in this State that evidence of this character will not be allowed by way of impeachment of a witness, unless the witness be first inquired of as to whether he has made such statement, and his attention directed to the occasion when, and the individual to whom such statement is claimed to have been made, so as to afford the witness every reasonable opportunity to give any explanation or qualification in his power. In this case this clearly was out of the power of the plaintiff to do upon this trial, as Governor Hubbard was dead, and his testimony was introduced by showing what he swore to upon a former trial.

It does not appear from these exceptions whether at the former trial, when Governor Hubbard was upon the stand and gave this testimony, any inquiry was made of him as to these alleged contradictory and inconsistent statements or not, and an opportunity thus then afforded him to explain them, or to contradict them if he chose.

The plaintiff's counsel allege that such inquiries were then made, and if they were, there could be no question but what this evidence would be equally as admissible as if the enquiry had been made of Governor Hubbard upon this trial.

But we are inclined to hold that if it appeared that no such inquiry was made of him on the former trial, such evidence would be properly admissible when his testimony on the former trial is proved from the minutes. Such contradiction might not have been known to the party at the time of the former trial, and if known, the condition of the case and the evidence on that trial might have rendered it entirely unnecessary to give it in evidence. When, therefore, such evidence is produced from the minutes, and when no inquiry can be made of the witness, the party ought not to be deprived of such evidence if he has any to offer. If it appear that such evidence was known to the party at the former trial, and he made no inquiry of the witness when he had an opportunity to do so, it would afford so much suspicion against

the evidence, as usually to deprive it of much weight with the jury.

This principle has virtually been decided in this State as we think. In *Downer et al.* v. *Dana et al.*, 19 Vt. 338, it was decided that this rule of practice does not apply to witnesses whose testimony is taken and used in depositions, even when they are taken with notice to the adverse party, who appears and examines the witness, and that such inconsistent declarations may be proved without any inquiry of the witness at the time his deposition was given.

The minutes of the witness' testimony on a former trial seem much the same as a deposition, and we think the reasons are equally strong for not applying this rule in such cases, as in the case of depositions.

The only remaining question in the case is, whether the payment of this note by Baxter to the Royalton Bank, (to whom Hubbard had negotiated it,) destroyed its negotiability so that Baxter could not legally transfer it to the plaintiff. We do not think this question is at all affected by the fact that originally the relation of the parties was really different from that apparent on the note, that the defendant originally was only an accommodation maker and surety for Baxter, but by a new agreement had become the real responsible maker, and the party ultimately liable to pay it. After this last arrangement was made the rights of the parties stood as if that relation had always existed from the time when the note was originally executed. The naked question is then presented, whether, when the payee of a note has once transferred it, but by the failure of the maker to pay it, he is compelled to take it up, he can legally transfer it to another, or is the negotiability of the instrument destroyed?

There seems to have been, at an early period in the history of the commercial law, an idea that such payment or taking up of a note or bill by the last endorser wholly destroyed its negotiability, even against prior parties, who were ultimately liable to pay the note or bill, and there were some decisions accordingly. Such were the cases cited by the defendant; *Beck* v. *Robly*, 1 H. Bl. 89; *Blake* v. *Sewell*, 3 Mass. 556; *Boylston* v. *Green*, 8 Mass. 465.

But however much this notion might formerly have obtained, it is now thoroughly exploded both in England and this country, and these cases have been expressly overruled; see *Guild* v *Eager*, 17 Mass. 615; *Hubbard* v. *Jackson*, 13 E. C. L. 555; Story on Promissory Notes 198; Story on Bills, and Chitty on Bills 247, and cases cited by Story and Chitty.

The principle seems now to be settled conclusively that when a note or bill is paid or taken up by any party to it, it not only destroys its negotiability, but extinguishes all right of recovery upon it against all parties subsequent to him upon it, and to whom he would be liable to pay it while they held it; but that as to all parties prior to him, and to whom he has the right to look for payment, when the note comes again to his hands, by taking it up he has the same right that he had before he made the first transfer, and that as against them he has the same right to again transfer it that he had originally, and that this continues until the note or bill is finally extinguished by being paid by the party liable to make ultimate payment.

We find no error in the proceedings of the county court, and the judgment is, therefore, affirmed.