## TRUMAN FRENCH *vs.* WILLIAM JARVIS.

Where an indorser takes up a promissory note, after it has been dishonored, by paying the amount of it to the holder, the transaction is in effect a re-purchase of the note, and not a payment of it, and the indorser becomes vested again with all the rights which he formerly had against prior parties on the paper.

Where a note, negotiated before due, is further negotiated after it has been dishonored, the holder takes the legal title, and can maintain a suit upon it in his own name, in the same manner as if he had received it before it was due.

And it is not necessary that such a holder should make a new demand upon the maker for payment and give notice of non-payment to the indorsers. The original demand and notice enures to the benefit of all subsequent holders.

Where a note, after it was dishonored, was delivered by the holder, indorsed in blank by the payee, to an agent of the holder to collect, under an agreement that the agent should search for property upon which to secure the note, and should bring any necessary suit in his own name, and compensate himself for his services and expenses out of the money collected, and on these facts the court below found that the legal title was conveyed unless the law was so that it could not be conveyed in such a manner and for such a purpose, it was held that there was no legal difficulty in the way of such a result.

ASSUMPSIT, brought against the defendant as indorser of three notes, made by one Rowland, payable to the order of the defendant, one for $2,275, dated March 23, 1857, one for $2,337, dated April 20, 1857, and one for $2,510, dated May 30, 1857, all payable at six months from date. The defendant pleaded the general issue, with notice, which was closed to the court.

The notes were made by Rowland and indorsed by the defendant for the accommodation of a joint stock corporation in New York, and were by the corporation delivered to one Elliott, a broker in New York, for him to send to Connecticut and get discounted for the benefit of the corporation ; for which service, if the discount was procured, he was to receive a commission. One Baldwin, who resided in New Haven in this state, was interested with Elliott in his business and in the profits to be derived from the transaction. Before the notes matured and while they were in Connecticut, Baldwin himself purchased them for value, and afterwards, before they became due, indorsed them and sold them to one Townsend, who was the owner and holder of them when they severally matured. When the notes fell due they were severally presented to the maker for payment and protested for non-payment, and notice of protest was duly given to the defendant and to Baldwin. Baldwin thereupon paid the amount of the notes to Townsend, took them up, and became again the owner of them.

The defendant claimed on the trial that Baldwin had after this continued to be the holder of the notes, and was such when the suit was brought, and that the plaintiff, French, had no such title to the notes as would enable him to maintain a suit upon them in his own name. The plaintiff denied this, and claimed

to be the legal holder of the notes, and on this point the court found the following facts.

Baldwin having taken up the notes, and being anxious to secure their payment, entered into an agreement with French, in good faith, before the commencement of the suit, by which French, who was a man of energy and skill, was to investigate the affairs of Jarvis, and trace out the transmutations of the property formerly held by him, for the purpose of discovering, if possible, property which might by legal proceedings be appropriated to the payment of the notes, and was diligently to exercise his skill and tact in this business, and make such journeys, expend such money, time and labor, employ such legal counsel, and institute such suits and legal proceedings as, in his judgment, might be necessary; for all which services French was to receive, in addition to the sum of $150 advanced to him by Baldwin, a reasonable compensation out of the ultimate avails of the notes; French to have the power to sue upon the notes in his own name, and to control all the proceedings to be instituted upon them, and to personally collect and receive the avails thereof, paying over to Baldwin the surplus of the avails, if any, that should remain after compensating himself. When the agreement was made both Baldwin and French contemplated the rendering of long and difficult services by the latter under the agreement. In pursuance of the agreement, before the commencement of the suit, Baldwin erased his own indorsement from the notes, and delivered them, indorsed in blank by Jarvis, to French, with intent to carry the agreement into effect, and to authorize and enable French to deal with the notes according to the agreement. And the court found that Baldwin did in fact convey to French the legal title to the notes, unless the law was imperatively so that a legal title to the notes could not be conveyed in the manner or for the purposes aforesaid. The court further found that French took the notes, pursuant to the agreement, and had ever since been the actual holder thereof, and that he in good faith commenced the performance of his part of the agreement, and was still engaged in such performance, and commenced and continued the suit in pursuance thereof, with

the knowledge and assent of Baldwin, and that it was not certain whether or not he would ever realize from the avails of the notes more than enough to compensate him for his services and expenditures under the agreement, though it was confidently expected by the parties that much more than enough would be received by him.

It was not claimed by the plaintiff that there had been any demand on the maker of the notes for payment of either of them, or any notice to the defendant of the dishonor thereof, by the plaintiff or by any one, subsequent to the demand and notice originally made when the notes severally became due and were protested for non-payment.

The defendant also claimed that, after the dishonor of the notes, they could not be transferred to French, so as to vest a legal title in him and enable him to maintain a suit upon them in his own name. A question was also made with regard to the usurious character of the notes, which need not be more fully stated. The court found the issue for the plaintiff, and the defendant moved for a new trial for error in the rulings of the court upon the points stated.

*Dutton*, in support of the motion.

The plaintiff had no legal title to the notes. To hold that he had would be to overrule *Curtis* v. *Bemis*, 26 Conn., 1, and *Lee* v. *Jilson*, 9 Conn., 94. The finding of the court with regard to the title will not avail the plaintiff, because the meaning of the court evidently is, that if such a contract as was proved could in law vest a title in the plaintiff, then the title was vested in the plaintiff. But the law is " imperatively so " that such a contract could not vest a title in the plaintiff. This is settled in the cases cited. See also *Emmet* v. *Tottenham*, 20 Eng. L. & Eq., 348.

If the plaintiff acquired a title, it gave him no right of action against Jarvis. 1st. The declaration counts only on an indorsement by Jarvis to the plaintiff. But this indorsement, so far as the plaintiff is concerned, was after the notes fell due. It was therefore a new indorsement, and required demand and notice, which it appears were not given. *Bishop* v. *Dexter*, 2

Conn., 419.  2d. The transaction between Baldwin and the plaintiff, if effectual, was a tranfer of a *broken contract*.  This can not be done in the case of negotiable paper, any more than in other cases, so as to vest a right of action in the plaintiff. A transfer of such paper before due, is merely a transfer of the contract according to its terms.  A transfer after due is of a different character.  1 Parsons on Cont., 202.  The general language used in the books is meant to apply only to transfers before the paper becomes due.  If any other cases can be found, it will appear that the question now presented was not raised.

*R. I. Ingersoll* and *Harrison*, contra.

The suit was properly brought in the name of French.  He had the legal title to the notes.  1 Swift Dig., 426.  3 Kent, 89.  Chitty on Bills, (9 Am. Ed.,) 566, 566 *a*, 567 and notes. Edwards on Bills, 662 and notes.  *Mauran* v. *Lamb*, 7 Cowen, 174.  *Dean* v. *Hewit*, 5 Wend., 257, 261.  *Gage* v. *Kendall*, 15 id., 640.  *Guernsey* v. *Burns*, 25 id., 411.  *Bragg* v. *Greenleaf*, 14 Maine, 395.  *Franklin Bank* v. *Lawrence*, 32 id., 586.  *Beekman* v. *Wilson*, 9 Met., 434.  *Way* v. *Richardson*, 3 Gray, 412.  *Hackett* v. *Kendall*, 23 Verm., 275. *Lee* v. *Filson*, 9 Conn., 94.  *Curtis* v. *Bemis*, 26 id., 1. *Southwick* v. *Ely*, 15 N. Hamp., 541.  *Davies* v. *Byrne*, 10 Geo., 329.  *Bancroft* v. *Paine*, 15 Ala., 834.  *Andrews* v. *Hoxie*, 5 Texas, 171.  *De Cordova* v. *Atchison*, 13 id., 372. *Smalley* v. *Bristol*, 1 Mich., 153.

French had the legal title against the indorser Jarvis, as fully as against the maker.  Chitty on Bills, 220, 229, 230. Story Prom. Notes, §§ 135, 302 and notes.  3 Kent, 89.  Edwards on Bills, 285.  1 Swift Dig., 426.  *Codwise* v. *Gleason*, 3 Day, 12.  *Williams* v. *Matthews*, 3 Cow., 252.  *Guild* v. *Eager*, 17 Mass., 615.  *Mead* v. *Small*, 2 Greenl., 207. Parsons on Cont., 212.  Parsons Merc. Law, 100, 101.  Also cases before cited.

STORRS, C. J.  It being found by the court below that the notes in question in this suit were not, as claimed by the

defendant on the trial, sold in the state of New York, by the corporation which held them, at a greater rate of discount than the legal rate of interest in that state, there is clearly no ground for the first point made by the defendant, which is founded on such a sale. The finding is conclusive on that question of fact, and is not the subject of revision before us.

The defendant next claims that Baldwin was always the legal holder of the notes, from the time when he took them up from Townsend down to the trial of this case, and therefore that the plaintiff, never having any legal title to them, could not maintain this suit. That the plaintiff must have such a title when the suit was brought, and continue to hold it to the time of the trial, is well settled. It not being claimed that he ever parted with such title if he acquired it from Baldwin, the question on this point is, whether he ever so acquired it; and that he did, we entertain no doubt. If the circumstances found by the court below, preceding its final finding as to the conveyance of the legal title of the notes to the plaintiff, are to be regarded as furnishing evidence merely, from which conclusions of fact are to be drawn, and this court had the power to draw such conclusions, we should not probably hesitate to infer from those circumstances such a conveyance. But we have no such power, and can only decide on facts found and presented to us. It is, however, by no means clear that, independent of such final finding, enough does not appear to require us, as matter of law, to pronounce that such a title was conveyed. But it is not necessary to decide that question, because we are clearly of the opinion that the finding of the court on the fact of such a conveyance, notwithstanding its hypothetical form, is in legal effect absolute and unqualified; for the court finds that Baldwin did in fact convey to the plaintiff the legal title to the notes, unless the law be imperatively so that a legal title to them could not be conveyed in the manner and for the purposes before mentioned; and we are of the opinion that, under the circumstances stated, the law interposed no objection to such a conveyance. It was no objection to the transfer of these notes by Townsend to Baldwin, or by the latter to the plaintiff, that they had been dishonored; for

no principle is better settled than that negotiable notes are assignable as well after as before they have become due, and continue negotiable until they are paid by the party primarily liable on them, subject to the qualifications, which however have no application to the present case, that if transferred after due they are affected by the equities existing with regard to them between the original parties, and that an indorser who has taken them up can not transfer them so as to render subsequent indorsers liable. Chitty on Bills, (9 Am. Ed.,) 241, *et seq.* Story on Prom. Notes, §§ 178, 180.

These notes, therefore, continuing to be negotiable, notwithstanding their dishonor, the only question on this part of the case is, whether the payment to Townsend by Baldwin of their amount and his receiving them back, was a negotiation or transfer of the notes to Baldwin, or an extinguishment of them, so that they could not afterwards be enforced against any of the prior parties; for, if the transaction was of the former character, they were plainly transferable from Baldwin to the plaintiff. On this point we are clearly of the opinion that the effect of that transaction was not a payment of the notes which operated as an extinguishment of them; that it amounted only to a repurchase of them by Baldwin, which remitted to him, and reinvested him with, his original rights, and placed him, in regard to the parties to the notes prior to himself, in the same situation in which he was before his transfer to Townsend; and that he, by such purchase, acquired the same rights as to such prior parties as any other purchaser from Townsend would be entitled to. Baldwin, having indorsed the notes to Townsend and become liable to him on that indorsement, might pay him their amount and receive them back from him, and thus redeem himself from such liability, and place himself in a situation to obtain the reimbursement to which he would be entitled from the prior parties to the notes; and this only was the legal effect of that transaction. Under a misapprehension of the point decided in *Beck* v. *Robley,* 1 H. Bla., 89, note, the Supreme Court of Massachusetts, in the cases of *Blake* v. *Sewall,* 3 Mass., 556, and

*Boylston* v. *Greene*, 8 Mass., 465, took a different view of the effect of taking up a note from the holder by a prior indorser; but in the case of *Guild* v. *Eager*, 17 Mass., 615, these cases, on a more careful consideration, were overruled by that court, in accordance with the more recent case of *Callow* v. *Lawrence*, 3 Mau. & Sel., 95, and the views we have adopted fully established.

In respect to the object or consideration of the transfer from Baldwin to the plaintiff, it is a matter with which the defendant has no concern, although we perceive nothing in the transaction of a peculiar or exceptionable character.

These principles furnish a complete answer to the claim urged by the defendant, that the liabilities of the maker of these notes and of the defendant could not be legally transferred to the plaintiff, on the ground that the promise of the former had been broken and the latter had been charged as indorser. The legal title of these notes being established in the plaintiff, the well-established principle, already stated, that a negotiable note continues to be negotiable as well after as before it falls due, shows conclusively that this claim of the defendant, and the reason on which it is founded, are without force. For what constitutes the negotiability of such an instrument but the power of the holder to assign his rights in it to another? But what sort of negotiability would it be, especially in the case of the notes now in question, if this claim of the defendant were sustained? The legal title to the notes would pass to the plaintiff, but no rights whatever which were attached to them. Baldwin would not be liable by reason of his being a party to the instruments, for his name does not appear on them; and as no one but the plaintiff has the legal title to them, we do not see how any other person than himself could resort to the defendant, the prior indorser, or why, therefore, the latter would not be altogether discharged from his liability. On the ground, moreover, upon which this objection is urged, that the notes being dishonored no liability on them could afterwards be assigned, Baldwin himself, after he had taken up the notes from Townsend, could not have enforced them against the defendant, because he held them only

as a purchaser after they had been dishonored. But it is unnecessary to pursue the reasoning on this point. The authorities, and those of the highest character, are decisive of it, and repel the defendant's claim. It is sufficient only to refer to them. *Williams* v. *Matthews*, 3 Cowen, 252. *Guild* v. *Eager*, 17 Mass., 615. *Callow* v. *Lawrence*, 3 Mau. & Sel., 95.

As to the remaining point suggested in the defendant's brief, although not pressed on the argument, that it was incumbent on the plaintiff to demand payment of the notes of the defendant, and to give him notice of their non-payment, and to which *Bishop* v. *Dexter*, 2 Conn., 419, was cited,—it is sufficient to say that that case has no application to the present, because there the note was not indorsed by the payee until after it fell due; whereas, in this case, it had been negotiated before due by the defendant, and he had regularly received notice of its non-payment by the holder on its dishonor; and that notice, it is well settled, enured to the benefit of any subsequent holder. Story on Prom. Notes, §§ 302, 303, 334, 452, and cases cited.

A new trial is not advised.

In this opinion the other judges concurred.

New trial not advised.